(12 Misc. Rep. 577.).

WHITEHEAD v. O'SULLIVAN.

(Supreme Court, Special Term, New York County. May, 1895.)

ATTORNEY AND CLIENT—LIEN OF ATTORNEY.

A temporary receiver of a corporation for whom plaintiff had rendered services as counsel was discharged, and the property turned over to the directors of the corporation, under an agreement between plaintiff, the directors, and the receiver by which the directors assumed the receiver's liability to plaintiff, and agreed that plaintiff should have a lien on the property so transferred. *Held*, that an equitable lien was created on such property, and was enforceable against it in the hands of the permanent receiver of the corporation thereafter appointed.

Action by Henry M. Whitehead against Sylvester J. O'Sullivan, as receiver of Amasa Lyon & Co. Judgment for plaintiff.

Frederic R. Coudert, for plaintiff.
Morris J. Hirsch, for defendant.

BEEKMAN, J. In September, 1891, a petition was filed by Amasa Lyon & Co., a corporation, for its dissolution, and one Andrew J. Nutting was appointed temporary receiver. The plaintiff, who had been the legal adviser of the corporation, assumed that relation to the receiver, and rendered professional services to him for which he made a charge of $5,000. The receiver having brought the affairs of the corporation into some degree of order, and the creditors having extended the time for the payment of their claims, the court, considering that the corporation was again solvent, dismissed the petition for its dissolution, and discharged the receiver. Before this could be done, however, it was necessary that some arrangement should be made with the latter in respect to his fees and certain liabilities, including the charges of the plaintiff, which he had incurred in the administration of his office. A few days before the final order was made, a conference was held between the plaintiff, the receiver, and the three persons who then constituted the entire board of trustees, looking to a settlement of the question. The amount of the plaintiff's claim was stated, and the receiver expressed his willingness to turn over the assets of the corporation to the trustees, provided the latter would assume this and the other liabilities he had incurred. To this the plaintiff assented, with the qualification that he should also have a lien upon the assets so transferred, as security for the discharge of his claim, it being urged that such a lien, in effect at least, existed in the right which the receiver undoubtedly possessed to have his lawful charges and expenses al-

lowed out of the property in his hands before he should be required to turn it back to the corporation. The trustees assented to these propositions, and, in pursuance of the arrangement, the final order was made which dismissed the petition, discharged the receiver, and directed him to surrender to the trustees the property in his hands belonging to the corporation. This direction he immediately obeyed, and the corporation, thus rehabilitated, resumed its business. It continued in active operation until August, 1893, when it again became embarrassed, and proceedings were again instituted for its dissolution, which resulted in a final order dissolving the corporation and appointing the defendant permanent receiver. Prior to the discharge of Nutting, the first receiver, the plaintiff had received on account of his services the sum of $600, and subsequently the corporation, at various times, made further payments, aggregating $1,250, so that at the time when the last petition was filed there was due to him on account of his claim the sum of $3,150. The defendant has realized upon all of the assets of the corporation, and now has in his hands the sum of $9,000, applicable to the payment of its debts, which amounted to about $100,000. Against this the plaintiff sets up his lien, and claiming payment in full of the balance of the amount so due out of the fund, asks the judgment of this court declaring the charge, and requiring the receiver to satisfy it out of the money in his hands.

The effect of the agreement made between the first receiver, the plaintiff, and the trustees above mentioned, followed as it was by complete performance on the part of the two former, was sufficient to create an equitable lien in favor of the plaintiff in respect to the identical property which was turned over by the receiver to the corporation. Possession is not necessary to the existence of such a lien; on the contrary, an essential distinction between common-law and equitable liens is that the latter arise in respect to property which still remains in the possession and under the dominion and control of the owner. 3 Pom. Eq. Jur. § 1233. Nor does there seem to have been anything illegal or inequitable in the arrangement that was made. The possession of the property was essential to the corporation, to enable it to resume its business. The receiver had a right to retain the assets in his hands until he had accounted, and to apply so much as might be necessary towards the payment of his fees and disbursements allowed by the court. He was not only entitled, but it was his duty, to seek legal advice in aid of his function, and, if he had insisted upon the adjustment of his accounts and the payment of the charges incurred by him in respect to the plaintiff, there can be little doubt upon the proofs that the court would have so directed, and the corporation would have received under the final order only the residuum of the property after the plaintiff's claim had been discharged. The corporation thus lost nothing by the agreement, but, on the contrary, gained the advantage which followed the forbearance of the plaintiff in enforcing his claim, and the control and use of the property which otherwise would have been appropriated, perhaps at a considerable sacrifice, to the immediate liquidation of the debt. The whole transaction seems to have been entirely fair and

reasonable. It resulted in the corporation obtaining possession of its property unaffected by any greater burden than that to which it was subject in the hands of the receiver, while the plaintiff, in promoting that end, has radically changed his position, surrendering the personal liability of the receiver Nutting and the means of payment through him out of the assets in his hands, and accepting in its place the agreement of the corporation to secure and ultimately to discharge the debt.

It is not necessary to follow the argument of the learned counsel for the defendant that the lien, so called, of the receiver for the payment of the indebtedness he had incurred to the plaintiff was not assignable. The plaintiff's right does not rest upon any such foundation. His claim to a lien upon the assets of the corporation is an original and not a derivative one. It arose out of the agreement with the corporation, and is quite distinct from that which the receiver possessed, although it is true that the two are closely related, the one having been the reason for the other, and the equity of the plaintiff's claim under the agreement being supported and reinforced by a similar charge in respect to the same indebtedness which had existed in favor of the receiver. The elements which should exist to confer the right of equitable lien are well defined in 3 Pom. Eq. Jur. § 1235. It is there said:

"The doctrine may be stated, in its most general form, that every express executory agreement in writing whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or incumbrancers with notice. Under like circumstances, a merely verbal agreement may create a similar lien upon personal property. * * * In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described or rendered capable of identification is to be held, given, or transferred as security for the obligation."

See, also, Hovey v. Elliott, 118 N. Y. 124, 23 N. E. 475, and cases there cited.

The case at bar seems to respond to this test. The property affected by the lien created in favor of the plaintiff was definite, and capable of exact ascertainment, but it was over and in reference to this, and not future acquired property, that the lien extended. The agreement was that the assets transferred by Nutting to the company should be subject to the charge, and the burden of proof is with the plaintiff to show that the defendant received into his possession assets or identified proceeds of assets originally subject to the charge in question. The proportion of the amount now in the receiver's hands which the plaintiff is entitled to have specially applied on account of his claim must be measured by and limited to the identified proceeds of the sale of the particular assets which were so affected by such lien. The evidence discloses that the only property thus susceptible of identification which came into the hands of the receiver

was the machinery and fixtures. The other property was used in the business of the corporation, new materials were purchased, the old debts of the corporation, amounting to $45,000 or $46,000, were paid, new debts were incurred in the prosecution of the business, a portion of which, to the extent of $13,000, was borrowed money, so that it is utterly impossible to say or rationally to infer that the ultimate residuum of $9,000 includes the proceeds of any portion of the original assets beyond the machinery and fixtures. Even in the case where equity will follow misappropriated trust funds through the transmutations following upon their absorption in other properties, the rule is well settled that the property finally impounded must be the specific product of the misappropriation. "The right of following the trust property in the new form which has been given to it, or in the property substituted for it, ceases only when the means of ascertainment fail, which, of course, is the case when the subject-matter is turned into money, and mixed and confounded in a general mass of property of the same description." 2 Story, Eq. Jur. § 1259, and note 4; Ferris v. Van Vechten, 73 N. Y. 113, at page 120; Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Refining Co. v. Fancher, 145 N. Y. 552, 40 N. E. 206. The principle involved in these cases is equally applicable to such a one as this. In each case the thing sought to be impressed with the charge must be the identified representative of the property to which the right invaded or impaired had originally attached. In the present case, it is quite plain that the residuum of $9,000 in the receiver's hands includes the proceeds of the sale of the machinery and fixtures which came into the hands of the corporation at the time the agreement with the plaintiff was made. The evidence shows that this property passed to the defendant, and was sold by him for the sum of $1,442.16. The lien which affected the property followed it into the hands of the defendant, and upon the sale attached to the proceeds, which now, in legal contemplation, form a part of the fund in the receiver's hands. There is some evidence showing that the furniture and fixtures account upon the books of the corporation is charged with the sum of $698, said to represent an aggregate of expenditures between the two receiverships for tools and repairs. There is, however, no proof giving any details from which it could be determined how much was expended for each. It is clear that the defendant would not be entitled to claim any deduction as against the plaintiff from the proceeds of any article originally subject to his lien on account of money expended upon it for repairs. So far as the item may indicate the purchase of additional tools, to which the plaintiff's lien did not attach, it is sufficient to say that it does not afford proof that the machinery and fixtures sold by the receiver embraced any such articles; nor, if they did, would the cost, rather than the price they brought, measure the extent of the deduction. The proof broadly identifies the machinery and fixtures sold as the same as that to which the plaintiff's lien attached, and the claim in reference to the above item appearing on the books of the corporation is too uncertain and indefinite to afford any basis for the allowance or deduction demanded.

Some question has been made as to the lack of any action of the trustees in their corporate capacity in respect to the agreement upon which the plaintiff sues. The evidence shows that there were but three trustees, each of whom was actively engaged in promoting the business of the corporation at the same place; that meetings were held informally and irregularly, taking place from time to time whenever it might seem to be desirable, without the issue of formal notices, and apparently without any of the forms usual in such cases. The minute book of the board does not disclose any meeting of the trustees at which any action was taken in respect to the claim, or in fact any of the liabilities incurred by the receiver Nutting. The evidence, however, of each of the directors confirms that of the plaintiff as to what took place when the conference was had between the trustees, the plaintiff, and the receiver Nutting. All assented to the arrangement, and, as we have seen, the agreement has been fully performed on the part of the plaintiff. It also appears that Amasa Lyon, who was one of the trustees, represented, also nearly the entire stock of the corporation, and was one of the consenting parties. It is not absolutely essential to the validity of a corporate act that the trustees of a corporation should proceed according to any particular form. If all are present, or have received due notice of the proposed meeting, action taken by them, intended to be a corporate act, although informally expressed, is as valid as if it had been surrounded by all the formalities usual and, it may be said, desirable in such cases. The law looks to the substance rather than to the form of things. Melledge v. Iron Co., 5 Cush. 158; Sheridan Electric Light Co. v. Chatham Nat. Bank, 52 Hun, 575, 5 N. Y. Supp. 529. Here there can be no doubt about the fact that the trustees entered into the agreement in question, all meeting together, and that the agreement has been wholly executed by the plaintiff. The corporation has received the full benefit of it, and there should be no difficulty, as there is none, in finding the action of the trustees sufficient to charge the corporation with the obligations assumed on its behalf under the agreement in question.

It follows, therefore, that the plaintiff has established his claim to a preferential charge on the funds in the hands of the receiver to the extent of $1,442.16, and that he is entitled to judgment so declaring, and directing the receiver to pay that amount over to him on account of his claim.