ANDREW H. BOWN and Another, Suing on Behalf of Themselves and All Other Stockholders of BUFFALO STEEL CAR COMPANY, INC., in Like Situation as Themselves, Who Shall in Due Time Come in and Seek Relief by and Contribute to the Expenses of this Action, Plaintiffs, *v.* HARRY T. RAMSDELL and Others, Defendants.

Supreme Court, Erie County, January 7, 1931.

Lewis, McKay, Bown & Johnson [*Carlton F. Bown* and *Merton E. Lewis* of counsel], for the plaintiffs.

Dudley, Stowe & Sawyer [*Joseph G. Dudley* and *Ansley W. Sawyer* of counsel], for the defendants.

EDWARD R. O'MALLEY, J. Plaintiffs, as stockholders of the defendant Buffalo Steel Car Company, Inc. (hereinafter referred to as the car company), bring this action to recover against the individual defendants as directors for an alleged loss suffered by said corporation, due to their malfeasance, bad faith, breach of trust and negligence in the discharge of their duties in the sale of the assets of the corporation for an inadequate consideration.

The individual defendants, by their joint answer, deny the charges of malfeasance, negligence, etc., and allege that said sale was for the best interests of the corporation and its stockholders. The defendants trust companies are holders of stock in said car company belonging to the plaintiff Parks as collateral security, and as such holders are made party defendants. Neither trust company has answered.

The official acts complained of are: (1) The sale was invalid because not made, or directed to be made, by the board of directors

prior to the signing of the contract; (2) the defendants made or confirmed the alleged sale after receiving a higher bid for the corporate assets; (3) the refusal of the stockholders to adjourn their meeting to grant further time in which to receive bids, and (4) the inadequacy of the selling price.

The car company was organized in 1920. Its total capital investment was about $1,260,000. It enjoyed some prosperity for a period of about three years. In 1924 the company met with adversity, owing to different causes, among which was the lack of business due to the changed method or practice of the railroad companies in having their work done in that line. The result was that the company became heavily in debt and was faced with the necessity of a shutdown, which was done in June, 1926. From time to time the question of selling the property and the price at which it should be sold was considered. Efforts were made during a period of three or four years to find a purchaser. The first offer received for the corporate assets was one for $150,000, on October 23, 1928, made by the General American Tank Car Corporation of Chicago, Ill. (hereinafter referred to as the tank company).

After the receipt of the tank company's offer and on October 26, 1928, at a special meeting, a resolution was passed by the board of directors calling a meeting of the stockholders for November 8, 1928, for the purpose of obtaining the consent required by the Stock Corporation Law* to sell the corporate assets. The directors of the corporation consisted of the individual defendant, Harry Yates, and the plaintiff Bown. Defendant Wyckoff did not attend the meeting, and Director Yates did not participate in any of the corporate proceedings in the sale of the assets. All present agreed upon the necessity of a sale.

The extent of the action taken by the board of directors at this meeting is in dispute.

Plaintiffs claim the sole action taken (material to this inquiry) was the adoption of the resolution calling the meeting of the stockholders for the purpose of considering the tank company's offer (Exhibit 6). Defendants claim that in addition to passing the resolution the directors unanimously decided that the corporate assets should be sold to the tank company at its bid of $150,000, or to any higher bidder whose offer might be approved by the stockholders.

Pursuant to such resolution, a circular letter and notice of the proposed stockholders' meeting was given to the stockholders, and the meeting was thereafter held on November 8, 1928. At this meeting a bid for $165,000 was received from H. R. Shore. At

---

* See Stock Corporation Law of 1923, § 20.— [Rep.

the same meeting a request was made by Mr. Thomas Hanrahan for an adjournment for forty-eight hours, in which to make a bid. This request was denied. A representative of the tank company was in the city at the time, and when advised of the Shore bid by telegram was induced to raise his bid to $166,500, and the stockholders thereupon voted to accept the tank company's bid at that amount. The vote for the resolution was 21,659 shares out of a total of 30,000. The holders of 2,025 shares voted against the resolution, which included the shares of plaintiff Parks. Thereafter and on the same day, a contract was entered into between the tank company and the car company, selling the property to the tank company for $166,500 (Exhibit " B ").

On November 9, 1928, the defendant Wills, president of the car company, received a bid from Mr. Hanrahan for $175,000 for the property. After consulting counsel and being advised a binding contract had already been entered into between the tank company and the car company, the Hanrahan offer was returned with the statement that the property had already been sold. On the same day plaintiff Bown, one of the directors, through his attorney, orally protested the sale to Wills and Sawyer, upon the ground that the board of directors had not authorized the sale since securing the consent of the stockholders. In view of this claim a special directors' meeting was held on November 13, 1928, and was attended by Directors Ramsdell, Wills, Cooley, Bradley, Wyckoff and the plaintiff Bown, at which the following action was taken:

After the minutes of the meeting of October twenty-sixth had been read, the claim was made that the minutes were incomplete and did not show what had actually transpired at the meeting, when the following action was taken: " *Resolved*, that the minutes be corrected to show authority in Mr. Wills to accept the Tank Car Company offer or any other offers, which received the stockholders' approval."

The defendants Ramsdell, Wills, Cooley and Bradley voted for the resolution. The defendant Wyckoff, who had not attended the meeting of October twenty-sixth, did not vote. Plaintiff Bown voted in the negative.

The secretary then read a proposed correction of the minutes to take the place of the last sheet in the minute book of the meeting of October twenty-sixth, as follows: " Mr. Wills then read to the meeting a letter from General American Tank Car Corporation offering $150,000.00 for all of the assets of the Company, including plant, equipment and contents, to be delivered by proper deeds and bills of sale on or before December 1st, and asking for an immediate response. After a full discussion of the proposition and of the

situation of the Company and of the car business generally, it was decided that the property of the Company should be sold for $150,000.00 if no better offer could be obtained, but since the consent of the stockholders was necessary the Directors could not now finally accept the offer. It was thereupon on motion:

" *Resolved*, that a meeting of the Stockholders be called for Thursday, November 8, 1928, at two o'clock P. M., at the office of Dudley, Stowe & Sawyer for the purpose of considering the offer.

" Mr. Wills was accordingly authorized to acknowledge receipt of the offer and to request the General American Tank Car Corporation to hold its offer firm until the result of the Stockholders' meeting could be ascertained. He was further authorized to accept on behalf of the Corporation the offer of General American Tank Car Corporation, or any higher offer which might receive the consent of the Stockholders at said meeting."

A motion was made and passed that the minutes, as corrected, be approved, Director Bown voting in the negative.

At the same meeting the following was passed: " *Resolved*, that the action of Mr. Wills in accepting the offer of General American Tank Car Corporation to purchase the property of the Company for $166,500.00 be and the same is hereby approved, ratified and confirmed " (Exhibit 8).

Plaintiff Bown then filed a statement protesting against the resolution correcting the minutes of the previous meeting, upon the ground that the board of directors did not take the action recited therein, and that a better offer (the Hanrahan) had been received, and also offered a resolution that the assets be resold to the highest bidder not later than December 1, 1928, providing the consent of the stockholders was obtained, which resolution did not receive a second.

The directors then passed a resolution directing the proper officers of the company to execute and deliver all deeds and bills of sale necessary to convey title to its property to the tank company, upon receipt of the payment of its offer of $166,500 contained in the contract.

Upon the trial Director Bown testified that the directors did not, at their meeting of October 26, 1928, authorize Mr. Wills to accept the offer of the tank company, or the offer of any higher bidder, which might receive the consent of the stockholders. Further, plaintiffs argue that the failure to enter such action in the minutes is a strong fact corroborative of Bown's testimony on this question.

The defendants Ramsdell, Cooley, Wills and the witness Sawyer testified such action was taken, and was not entered in the minutes

because of the suggestion made by Mr. Ramsdell to omit such action from the minutes lest the tank company should learn of it and conclude to withdraw its bid. The defendants also claim that the circular letter to the stockholders shows conclusively that Messrs. Wills and Sawyer, who prepared the same, understood that it was decided to sell to the highest bidder whose bid would be approved by the stockholders. The letter stated: " The offers now at hand are sufficient to pay the indebtedness of the Company and to make a very small distribution to the preferred stockholders. If any better offer can be obtained before the stockholders' meeting, it will, of course, be taken up. The Board feels that the assets should be disposed of before they shrink, through carrying charges and deterioration of plant and equipment, to a point below the company's indebtedness, and that unless better offers are obtained, the opportunity should not be lost of accepting the present offer." (Exhibit T.)

Upon all the evidence, I am of the opinion that the plaintiffs have failed to meet the burden of proof placed upon them by law of establishing their claim on this issue, and that the evidence offered by the defendants sustains their claim that the board of directors, at said meeting held on October 26, 1928, did determine and decide to sell the property at the tank company's bid, or at any other bid higher than that, in the event that the consent of the stockholders was given. I am also of the opinion that the board of directors were within their rights in correcting the minutes of said meeting, so as to show what their official action was in fact on that matter.

In view of this conclusion, I am of opinion that a binding contract was made on November eighth, upon the part of the car company, for the sale of the corporate assets.

Informal concurrence or assent to a decision by a majority of the board of directors, in meeting assembled, constitutes corporate action as effectively as a formal resolution. (*Young* v. *U. S. Mortgage & Trust Co.*, 214 N. Y. 279, and cases cited; *Catholic F. M. Society* v. *Oussani*, 215 id. 1; *Whitehead* v. *O'Sullivan*, 12 Misc. 577.)

As to the charges of bad faith, malfeasance, negligence, etc., on the part of the defendants in their official action, either as stockholders or directors, it appeared that at the stockholders' meeting of November 8, 1928, all the bids received were submitted. These were: (1) The original bid of the tank company for $150,000 for the whole plant; (2) the Shore bid of $165,000 for the whole plant; (3) the Crane bid of $60,000 for the equipment; (4) the Shore bid of $75,000 for the equipment and some other items,

and (5) the second bid of the tank company of $166,500 for the whole plant. These bids were all considered and a resolution was passed giving consent to the corporation to sell to the tank company at its bid of $166,500, which was the highest bid received and before the committee at that time.

The facts upon which the charges are based are:

(1) The refusal of the stockholders to grant Mr. Fenton M. Parke's request for further time to the Shore Company, in which to increase its bid, provided it cared to do so. The Shore Company's representative was unable to state that his client would raise its bid;

(2) The refusal of the stockholders to adjourn their meeting for forty-eight hours upon the request of Mr. Hanrahan to permit him to make a bid if he concluded to do so. Mr. Hanrahan testified he understood from Mr. Wills that the meeting had been adjourned or would be adjourned. Mr. Wills denies he agreed to adjourn the meeting, and told Mr. Hanrahan it would be necessary for him to have his bid there at two o'clock that afternoon.

(3) Knowledge of the board of directors of the Hanrahan bid of $175,000, on October thirteenth, at its special meeting, when the board approved and confirmed Mr. Wills' action in accepting the offer of the tank company.

If an adjournment had been taken, the Shore Company might not have raised its bid, and Mr. Hanrahan might not have submitted a bid. When Mr. Hanrahan's bid was finally received on November ninth, the board of directors were advised by their counsel that they already had entered into a binding contract to sell the property to the tank company.

No fraud is charged or claimed by the plaintiffs. No motive was proven or charged upon which bad faith, etc., could be predicated. I am of opinion that these circumstances fall short of proving the charges made, where, as here, all — directors and stockholders — were agreed that the property should be sold with expedition. Upon all the evidence, I am, therefore, of the opinion that the defendants have failed to sustain their claims that the individual defendants were guilty of bad faith, malfeasance, breach of trust as trustees of the car company, or negligence, in their various acts, whether as directors or stockholders, which culminated in the sale of the corporate assets.

The measure of duty imposed upon the defendant directors was the exercise of reasonable diligence. It was their duty, in selling or dealing with the corporate property, to exercise the same degree of care that men of ordinary prudence would have exercised in selling or dealing with their own property. They are not liable

for error of judgment, if they act honestly and in good faith.  (*Hun* v. *Cary*, 82 N. Y. 65; *General Rubber Co.* v. *Benedict*, 215 id. 18.) They were entitled to reply on the advice of counsel, and in so doing were protected from charges of bad faith or negligence. (*Matter of Joost*, 50 Misc. 78; affd., 126 App. Div. 932; affd., 194 N. Y. 547; *O'Conner* v. *Gifford*, 117 id. 275.)

Upon the claim of the inadequacy of the selling price, it appears the car company plant was built in 1920 at a total cost of about $1,260,000. Plaintiff Parks testified it was worth $800,000 in November, 1928, after allowing proper depreciation. The witness Thompson, called by the plaintiffs, placed the value of the plant at $600,000, after deducting depreciation.

As against plaintiffs' claim, the defendants contend that the officers of the car company had been trying to find a purchaser for the property for a period of some three or four years prior to November, 1928; that these efforts to sell had been made in many of the leading industrial centers of the United States without success. That after deciding to sell the property the directors and officers, at their meetings from time to time, had discussed and considered the price or prices at which the company would be willing to sell. At first they were of opinion they would sell the plant for $1,000,000. Later they indicated a willingness to sell at $750,000. Later they thought it would be the part of wisdom to sell for $500,000, and finally they were of opinion it would be better to sell it for $250,000 if a purchaser could be found.

The first and only offer received was on October 23, 1928, for $150,000, from the tank company. Upon receipt of this offer a stockholders' meeting was called. At this meeting two other bids were submitted, one from the Shore Company for $165,000, and the second bid from the tank company of $166,500. Mr. Hanrahan's bid for $175,000 was received one day after the stockholders' meeting had been held.

If the adequacy of the selling price is to be measured by the plant's cost, less depreciation, or by the value of a plant of its age and size, as a going concern and at a time when there was a demand and a market for such a plant, the price at which it sold no doubt would have been inadequate. On the other hand, if the value of the plant is to be measured by the facts, that it had been idle three to four years and shut down for two years and six months, that it had its period of adversity and had been losing money and was heavily in debt, and further, that there was no market or demand for such a plant at the time of the sale, could it be said that under such circumstances the price was inadequate? I do not believe the evidence warrants or would

sustain such a conclusion. The average offer of the four bids received at and about the time of the sale was $164,125. These bids indicated the opinion of the bidders as to the value of the plant under all the circumstances and in its condition at the time of the sale.

Upon all the evidence and for the reasons herein stated, I have concluded that the director defendants are entitled to a decision which is hereby granted dismissing plaintiffs' complaint, with costs.