In the Matter of the Estate of EUGENE GERBEREUX, Deceased.

Surrogate's Court, Westchester County, July 7, 1933.

*Wallin, Beckwith & Edie* [*Dorothea Genzlinger* of counsel], for the trustees and for the Gerbereux Company.

*Lowen E. Ginn* [*Joseph E. Cavanaugh* of counsel], for the objector.

SLATER, S. This account of proceedings is the result of a compulsory accounting proceeding begun in September, 1932. The account was filed by the trustees on April 11, 1933. The petition for the judicial settlement was filed on April 26, 1933, by the attorney for Eugene W. Gerbereux, the person who sought to have the court compel the filing of the account by the trustees, because the trustees did not proceed.

Objections to the account were filed on May 12, 1933, by Edward Gerbereux, Eugene W. Gerbereux, Vincent de P. Gerbereux and Hortense K. Wright. Supplemental objections were filed on May 13, 1933.

On May 16, 1933, when the matter came on to be heard upon the objections, William C. Bryan, individually and as trustee under the will of Eugene Gerbereux, filed an answer setting forth that the estate had been properly distributed; that he had been released as executor by said objectors by an instrument filed in this court on June 24, 1930; that, by such release, he was fully discharged from all activity, and asked that the objections be dismissed.

On the same day Walter D. Gerbereux, individually and as executor of Johanna Gerbereux, answered the petition and made the same prayer as set out in the preceding answer. On the same day the Gerbereux Company answered the petition and prayed that the proceedings be dismissed as to it.

On May 19, 1933, motion was made by the objectors to strike out the answers.

Eugene Gerbereux, the decedent, died February 9, 1918, and his will was admitted to probate on April 16, 1918. He left surviving him Johanna Gerbereux, his widow, and three children: Edward Gerbereux, son by the first wife; Margaret C. Franzman, a daughter by the second wife, and a son, Walter D. Gerbereux, a child by the third wife and widow.

The decedent, at the time of his death, was the owner of 2,836 shares out of a possible 3,000 shares of the stock of the Gerbereux Company, a corporation having assets consisting entirely of real estate.

The will appointed the wife, Johanna Gerbereux, Denis F. Gerbereux, a cousin, and William C. Bryan as executors and trustees of the trust. Denis F. Gerbereux, the executor, resigned November 3, 1922, and Johanna Gerbereux died February 21, 1926.

The gift of the estate is made under the seventh paragraph of the will, which is as follows:

" *Seven'h.* All the rest, residue and remainder of my estate, both real and personal, of whatsoever kind and nature, and wheresoever situate, I give, devise and bequeath, in fee simple, unto my Executors aforesaid, In Trust, Nevertheless, for the following uses and purposes.

" 1. To take possession of, manage and control the same, as fully to all intents and purposes as I could do if living, with full power to sell, convey, mortgage or lease the same or any part thereof, and to execute, acknowledge and deliver any and all instruments necessary and proper in the premises. I *will and direct* that my said Executors and Trustees, *in their full and uncontrolled discretion* may hold *as long as they see fit as investments of the trust funds created by this*, my Last Will and Testament, *any and all stocks*, bonds, securities or other personal property or any real property which I own at the time of my death. I further will and direct that my Executors and Trustees shall hold said rest, residue and remainder of my estate in trust in three equal and separate funds, but provided it be not prohibited by law and will not destroy and nullify the trusts herein created, I empower my said Executors and Trustees, for purposes of investment only, to deal with said rest, residue and remainder of my estate as one fund.

"2. To receive and collect the rents of my real estate and the income of my personal property, and to invest and keep invested the proceeds of the sales of said real estate and personal property.

"3. After the payment of necessary and proper charges and expenses to pay the net income as follows:

"(1) I direct my said Executors and Trustees to pay the net income of the first of said three equal trust funds, semi-annually unto my son, Walter D. Gerbereux, until he shall attain the age of thirty years, and when he shall attain such age, I give, devise and bequeath unto him absolutely and forever, the principal of the aforesaid first trust fund. * * *

"(2) I direct my said Executors and Trustees to pay the net income of the second of the aforesaid equal trust funds, semi-annually unto my wife, Johanna Gerbereux, during her life, and upon her death, I give, devise and bequeath the principal of said trust fund, absolutely and forever, unto my son, Walter D. Gerbereux, or unto his descendants, *per stirpes*, if he shall predecease my said wife. * * *

"(3) I direct my said Executors to pay the net income of the third of the aforesaid trust funds, semi-annually unto my son, Edward Gerbereux, *during his life*, and upon his death to divide and pay over the principal of said trust fund, equally among his descendants, *per stirpes, unless said trust be sooner terminated* as follows: As each child of my son Edward during my son Edward's life, attains the age of twenty-one years, I give, devise and bequeath unto such child, absolutely and forever, a share in the principal of said trust fund, proportionate to the number of my son Edward's children surviving me, the value of such share to be fixed and determined by my Executors and Trustees, and such child shall have no further interest in my estate, except that upon the death of any of my son Edward's children surviving me and not attaining the age of twenty-one years, I give, devise and bequeath, absolutely and forever, the share which such deceased child would otherwise have had in such trust fund, fixed and proportioned as aforesaid, unto the descendants of such child, *per stirpes*, and if such child leave no descendants, unto the surviving children of my son, Edward, equally,— the descendants of deceased children to take the parents share."

Walter survived his mother and arrived at the age of thirty years on July 24, 1927. The children of Edward Gerbereux, viz., Eugene W. Gerbereux, Vincent de P. Gerbereux and Hortense K. Wright attained the ages of twenty-one years respectively on March 12, 1922, April 24, 1924, and July 12, 1926.

The son, Edward Gerbereux, had a life estate in one-third part

of decedent's estate from the date of the father's death until his children severally arrived at the age of twenty-one years.

About a year after the will was probated, *i. e.*, April 12, 1919, the court was petitioned to open the probate upon the request of Margaret C. Franzman, a daughter of decedent by his second marriage, who had not been cited upon the proceedings for probate. On June 12, 1919, the court reopened the probate proceeding. The petitioner appeared by attorney and answered. Commission issued to take testimony. The executors appealed therefrom to the Appellate Division. On October 7, 1924, an order was made framing the issues. The matter was allowed to run along for five years until May 10, 1929, when the proceeding was restored to the calendar, and on May 29, 1929, an order was entered affirming the decree of probate.

On the 12th day of June, 1919, an order was made by the surrogate decreeing that, during the pendency of the probate proceeding as opened, the executors be stayed and enjoined from distributing, disposing of or interfering with any of the property, funds or money belonging to said estate. Such order continued in force until May 29, 1929, when it was vacated by an order which affirmed the decree of April 16, 1918, admitting decedent's will to probate, and authorized the executors to distribute the money and property of such decedent in accordance with the provisions of the will. Within the period from April, 1918, to May, 1929, the executors held the stock of the company. The trusts could not be set up due to the order of stay.

In 1930 there was a division of the stock between the persons interested in the estate. This is being considered in another litigation pending before this court, wherein certain releases were taken, and, in such litigation, those who made the releases are petitioning the court to grant a rescission.

Until the act of division and distribution shall be fully performed, the administration of a trust is not complete. Even if the title to personalty had vested in the beneficiaries under the will and had been wholly severed from the trustee, the duty to divide and distribute continued. (*Matter of Thomas*, 254 N. Y. 292; *Matter of Miller*, 257 id. 349, 355.) It is contended by the trustees that they have made distribution of the stock.

Edward Gerbereux and his children, in October, 1932, petitioned the court to compel the executor-trustees to *account for their acts* during the time in which he was possessed of his life estate in a one-third share of decedent's estate. This application appeared on the calendar several times and the executors and trustees answered

and said that the matter had been wound up and they should not be compelled to account. The difficulty was that the parties did not appreciate the fact that this estate possessed only shares of stock in a corporation of the State of New York.

The surrogate has jurisdiction to inquire into the conduct of executors or trustees herein as directors of the corporation, and to hold them liable for any injury done the estate. (*Matter of Auditore*, 249 N. Y. 335; *Matter of Kinreich*, 137 Misc. 735; *Matter of Pulitzer*, 139 id. 575; *Matter of Boyle*, 140 id. 523.)

The law has kept pace with the growth of corporate activity. The directors who willfully abuse their trusts become liable. If they are trustees of trusts created under wills and serve as directors and act for their own enrichment, courts of equity will hold them liable for corporate waste.

The internal corporate management may be scanned where its treatment by an executor or trustee is questioned and such executor or trustee is a director whose responsibility to the estate is questioned, not for the purpose of dealing with the corporation, but to determine whether the fiduciary's acts have resulted in a depreciation of the stockholdings of the estate.

The principle laid down in *General Rubber Company* v. *Benedict* (215 N. Y. 18) is authority to hold a corporate executor and trustee where loss is suffered as a result of the acts of the board of directors, upon the assumption that the knowledge of its officers was its knowledge and their acquiescence was its acquiescence. (*Bown* v. *Ramsdell*, 139 Misc. 360, 366, 367.)

The court ordered an account to be filed by the executors as trustees of the trust created for Edward Gerbereux with remainder interest to his children, under the rule laid down in *Farmers' Loan & Trust Co.* v. *Pierson* (130 Misc. 110).

The application of the objector to dismiss the answers of the executors and trustees and the Gerbereux Company is denied because the accounts, the objections and answers filed thereto constitute the pleadings, and their effect will receive consideration. (*Matter of Brady*, 111 Misc. 492; *Matter of Bielby*, 91 id. 353, 363, and cases cited; Surr. Ct. Act, §§ 49, 51; *Matter of Michelson*, FOLEY, S., 148 Misc. 753.)

Of the objections, *first* is that the executors were members of the board of directors of the Gerbereux Company and received salaries; *second*, that, in the transaction of the company's business, which was largely buying, selling and renting real estate mostly in the city of Yonkers, what is known as the Belfort Apartments were managed on a co-operative plan and later sold and a loss taken thereon; and *third*, other acts are pointed to as having caused losses.

In the management of affairs of a family corporation, irregularities not directly harmful in their nature will be overlooked. (*Haff* v. *Long Island Fuel Corporation*, 233 App. Div. 117, Justice DAVIS writing for the Second Department.)

" Courts are not to shut their eyes to the realities of business life." (*Barkin Construction Co.* v. *Goodman*, 221 N. Y. 156, 161.)

There were other persons who had owned stock of the company long before the decedent's death. They were engaged with him in the business venture. In the eleven years between 1918 and 1929, while litigation was pending with regard to the rights of persons to come in and be permitted to contest the decedent's will, the executors held the stock of the company and sat in as directors with others. The will gave them the right to continue to hold such stock. It is a fundamental rule that executors or trustees must act for the benefit of the trust estate, and not gain advantage directly or indirectly.

The payment of added compensation for extra services rendered by an executor or trustee is discouraged by the courts and the right to such compensation is subjected to strict judicial scrutiny because of the adversity of interest — a trustee and a paid employee. (*Matter of Flood*, 133 Misc. 72, 74.) While it is true that ordinarily the commissions allowed by law are deemed to be full compensation for the performance of services, it is not an inflexible rule. (*Matter of Berri*, 130 Misc. 527, 534.) While Johanna Gerbereux, widow, lived, she received a salary as president of the company. Walter Gerbereux received a salary and William C. Bryan received a salary.

The work of the executor-trustee directors was in the management and the financial care of each of the real properties. They made leases, mortgages, sales and exchanges of property. It was an active real estate corporation. It took their time apart from the ordinary work of an executor.

Here is a picture of this family corporation:

(1) The decedent's entire property consisted of 2,836 shares of stock out of a total of 3,000 shares in the Gerbereux Company. It was an active real estate business, with a capital of $300,000. At the time of decedent's death the net assets of the company were $240,771. On April 30, 1932, the net assets of the company (being equities in real estate and other receivables), as shown in the account of proceedings, were $252,666.98.

(2) Decedent had been married three times, and the widow, Johanna Gerbereux, the third wife, was the mother of Walter D. Gerbereux, the mothers of the other children having predeceased.

(3) The sixth paragraph of the will is as follows:

" *Sixth.* Upon the express condition precedent that my son,

Edward Gerbereux, shall release and forever discharge me and my estate from any and all debts and other obligations which he shall have or shall claim to have against me at the time of my death, and without in any wise admitting that I am now indebted or under any financial obligation to my said son, I release said Edward Gerbereux from all debts and financial obligations whatsoever due and owing from him to me at the time of my death."

The residue of the estate is given in trust as follows: One-third of the income to Walter D. Gerbereux until he shall reach the age of thirty years, and then to him in fee; one-third of the income to the widow, Johanna, for life (she died February 21, 1926), then over in fee to her son, Walter D. Gerbereux: one-third to Edward Gerbereux for life, unless said trust be sooner terminated as each child of said son, Edward, attains the age of twenty-one years when it is given to said child in fee.

(4) The provision made for the wife was in lieu of dower.

(5) The executors were accorded the right " in their full and uncontrolled discretion " to " hold as long as they see fit as investments of the trust funds created by this, my Last Will and Testament, any and all stocks, bonds, securities or other personal property or any real property which I own at the time of my death."

The will also empowers the executors, for the purposes of investment only, to deal with said rest, residue and remainder as one fund.

(6) The minutes of the board of directors and of the stockholders are in evidence. The company was incorporated about May, 1914. At a meeting of directors held November 3, 1915, the salary of Eugene Gerbereux, the decedent, president of the company, was reduced from $100 per week to $60 per week. Such salary was continued until his death. After his death, Jules Weber was elected president March 11, 1918, and Mrs. Johanna Gerbereux, the widow, was elected vice-president. The records of this meeting show that the chairman said that " Mr. Gerbereux had made it known that in the event of his death, he desired that his salary pass to his wife Johanna Gerbereux." It was thereupon voted that the salary of sixty dollars per week paid to the office of president be discontinued and that the salary of the office of vice-president be fixed at sixty dollars to continue until further notice.

(7) An increase in salary was voted to Walter D. Gerbereux on May 2, 1927, as disclosed by the minutes of the directors of the company. It appears from the account of proceedings that the secretary and treasurer, Mr. Bryan, also received a salary throughout the accounting period.

(8) On January 29, 1919, the Gerbereux Company entered into a contract with the W. L. McLaughlin Company, which company

later became known as the Yonkers Realty Exchange, Inc., the ownership of which was in Edward Gerbereux two-thirds interest, in William C. Bryan one-third interest. The purpose of the contract was to manage the real property of the Gerbereux Company, to employ help, purchase supplies and collect the rents. This contract was renewed for five years from January 24, 1924, but on October 13, 1926, the minutes of directors of the company show that said contract was canceled by the Gerbereux Company, based largely upon the fact that there was money owing from the Realty Exchange to the Gerbereux Company which was not paid.

Edward Gerbereux testified that the average annual income of the Yonkers Realty Exchange was $7,000, and further stated that it did other real estate work.

(9) The interest of Edward Gerbereux in the trust fund ceased when his children reached the age of twenty-one: as to one-third March 12, 1922; as to one-third April 24, 1924; as to one-third July 12, 1926. At these several dates the remainder interest vested in his three children.

(10) From 1919 until 1929, because of litigation to open probate which was demanded by an alleged child of decedent, the executors were subjected to a stay by order of this court.

(11) The widow received a salary of sixty dollars per week until her death while acting as vice-president and president of the company. William C. Bryan received a salary while acting as secretary and treasurer of the company. Edward Gerbereux was receiving two-thirds of the income of the Yonkers Realty Exchange, a large part of the income of which flowed by reason of the contract between said exchange and the Gerbereux Company with regard to the collection of rents and management of the property of the Gerbereux Company.

(12) The base of the difficulty surfaced in these objections is that the majority interest and control of the company is in Walter D. Gerbereux, the son of the last wife of the decedent. This is a struggle of a minority interest.

At the time of decedent's death the board of directors consisted of five persons, three not of the family of the decedent.

With regard to the salary of Walter D. Gerbereux: At a meeting of the directors held May 2, 1927, all directors were present, viz., Walter D. Gerbereux, Nelson Hoyt, John J. Kingsley, Edward Gerbereux and William C. Bryan. The purpose of the meeting was to elect officers for the ensuing year and to consider any other business. On motion of Edward Gerbereux, it was unanimously voted that the officers of the company for the ensuing year be Walter D. Gerbereux, president; Nelson Hoyt, vice-president;

William C. Bryan, secretary-treasurer. The minutes show the following: "The next matter that came before the meeting for consideration was the salary for the office of president of the Company." It was moved that the salary for the office of president be increased from sixty dollars per week to eighty dollars per week. "This matter of salary was then discussed by all present * * * and when put to a vote was *unanimously carried, each Director voting 'yes.'*" Edward Gerbereux approved of the salary of the president. He in no way disagreed.

The annual salaries approximated about $5,000.

After the decedent's death no dividend was voted or paid. No proof was offered that dividends had been theretofore paid.

I do not believe such pay for services rendered as officers of the corporation, upon the volume of business transacted, amounts to a misuse or spoliation and waste of corporate property, nor do I believe that it diminished the value of the stock held by the trust. It did not amount to a devastavit to create such a personal interest in them as to conflict with their duties as trustees. The facts are entirely dissimilar to those in *Matter of Auditore* (*supra*) and *Matter of Kirkman* (143 Misc. 342):

As to the alleged loss occasioned with regard to the Belfort Apartments: There was offered in evidence the minutes of the board of directors and the minutes of the meetings of stockholders of the corporation. They show that, after decedent's death, his widow, Johanna Gerbereux, was elected president of the Gerbereux Company, and William C. Bryan secretary. At all the meetings of directors and stockholders, Edward Gerbereux, one of the objectors herein, was present, either as a substitute stockholder or a director, the latter between May 26, 1926, and May 30, 1930. The records show that he was prominent in all the affairs which appear upon the minutes of the meetings.

At a meeting held February 27, 1924, a contract was voted to be entered into between the Gerbereux Company and the Yonkers Realty Exchange, Inc., regarding the employment of the exchange in the care of the real properties, and one of the persons interested in this Realty Exchange was Edward Gerbereux, who owned a two-thirds interest. At this meeting a proposition came from the Realty Exchange with regard to the Belfort Apartments at Yonkers, N. Y. It was that the property be taken over by a corporation to be organized for operating the premises on the one hundred per cent co-operative plan. To quote from the record: "Mr. Edward Gerbereux went at length into the details of the matter and stated the result of his investigations as to the soundness and feasibility of operations of this nature." Mr. Edward Gerbereux then read a

letter from the Yonkers Realty Exchange, Inc., with reference to a proposition to purchase the Belfort Apartment House. The latter is given in its entirety in the record. It was at a later meeting resolved that the proposition for the sale be accepted.

At the several meetings of directors and stockholders, the motion was generally made by Edward Gerbereux that the treasurer's report and the other statements be placed on file.

At a special meeting of directors of June 23, 1926, full discussion was had with all directors present, including Edward Gerbereux, regarding financial conditions existing between the Gerbereux Company and the Yonkers Realty Exchange. This also had to do with the Belfort Apartment.

Again, on October 13, 1926, there was a lengthy conference had with, and explanations from, Mr. Edward Gerbereux regarding the business relations existing between the Realty Exchange and the Gerbereux Company. The record shows that Edward Gerbereux was indebted to the Gerbereux Company, and there was an effort being made to compromise the indebtedness, having to do with an assignment from Edward Gerbereux and his children of their interest in the estate. The inference is clear that the net collections of the Yonkers Realty Exchange due the company were not handed over.

At this date Edward Gerbereux's life interest had ceased and his children were distributees of the stock.

At the meetings Edward Gerbereux was present and took part until the meeting of directors of November 18, 1929, of which the minutes state that the president said that the meeting had been called for the purpose of considering the matter of the settlement of various assignments made to the company, and that the assignments had been given by the legatee of the estate of Eugene Gerbereux. A resolution was passed which said that Edward Gerbereux was indebted to the company in the sum of $17,331.15; that said claim was secured by assignments made by the three children of Edward Gerbereux in the sum of $5,000, which assignments are filed in the office of the surrogate of the county of Westchester; that the only assets of the estate of Eugene Gerbereux were shares of stock in this corporation, for which there was no market; and further recited that the debtors had offered to transfer to the corporation shares of its capital stock at a price of approximately sixty-five dollars per share, in satisfaction of said claims; and whereas Edward Gerbereux's claim was to be satisfied by assignments of eighty-nine shares of stock from each of his three children, it was voted that the offer be accepted.

A further meeting of directors was held on May 12, 1930, at which Edward Gerbereux was present as a director. The matter of the assignments from the children of Edward Gerbereux was explained

and discussion was had as to the value of the shares. The minutes show that Edward Gerbereux took up the discussion which had to do with the signed acceptance of the proposition which was in the hands of Robert M. Clark, attorney. It was stated that Mr. Clark had written acceptances, and the meeting was adjourned.

The annual meeting of stockholders was held May 21, 1930. Robert M. Clark, attorney, appeared for Edward Gerbereux by proxy. The minutes of the annual meeting of May 15, 1929, were read and approved. A statement of business and a balance sheet of the company was explained. The treasurer made his report. At this election of directors Edward Gerbereux was not re-elected to the board. The president brought up the matter of the assignments made to the Gerbereux Company by the legatees of decedent's estate. Mr. William J. Wallin, attorney for the company, was present and explained the nature of the assignments, which were to provide for the settlement of amounts due by having the company take back the stock of the company at approximately seventy-five dollars per share in sufficient amount to cover the amounts due without recapture of the shares of stock. It was recited that the company had the claim against Edward Gerbereux; that the debtors had offered to transfer to the corporation shares of stock. Edward Gerbereux's claim was to be satisfied by taking shares of stock from his three children in the amount of seventy-eight shares from one and seventy-seven shares from each of the other two. It was voted that the officers execute such papers as to bring it about so that the claim might be satisfied. The children assigned the stock to pay their father's debt to the company.

So, it will be observed that Edward Gerbereux, now complaining and objecting with regard to the Belfort Apartment business transaction, was at all times a party to it. Having been a participant and a beneficiary of an alleged diversion of funds of the corporation, he is precluded from raising such a question at this time. (*Farrow* v. *Holland Trust Co.*, 74 Hun, 585, 600; *Franz* v. *Nigri*, 232 App. Div. 150, 154; *Bolt* v. *Rogers*, 3 Paige, 154.)

Even if he had not been an approving party of the transaction, the most that could be said about the business transaction and its result, on the part of his children, is, if any loss to the corporation, it was occasioned by an error of business judgment on the part of the stockholders or directors of the company. (*Matter of Demmerle*, 130 Misc. 684; *Bown* v. *Ramsdell*, 139 id. 360, 366, 367; *Matter of Clark*, 257 N. Y. 132.) *Matter of De Beixedon* (262 N. Y. 168) holds that acts, while perhaps ill-advised and unwise, not amounting to negligence, will not justify surcharging the executor.

The third objection points to the fact that real estate was not sold

at a time when, in the opinion of Edward Gerbereux, it should have been sold.

I have searched the record in vain for any allegation or evidence of bad faith, fraud, embezzlement or fraudulent transaction by the executor-trustees. There is no such charge and no such evidence.

Fiduciaries are to be surcharged for the waste or losses of corporate assets in which they have been the gainers and then in the amount which exists between the value of the stock of the corporation before a loss was taken and after such loss had been made. No evidence was tendered with regard to the value of shares of stock at the date of testator's death and at the present time. The surrogate is not dealing with the corporation but with the value of the stock at specified times. (*Matter of McCafferty*, 147 Misc. 179, 188.)

It is urged by the objectors that the testator devised the real property held by the corporation to the trustees directly. This is not a single stockholder case and the corporate entity cannot be disregarded. While the trustees owned 2,836 shares of stock out of the total of 3,000 shares, they were not the sole members of the board of directors. The trustees of the trust had a right to receive the dividends whenever dividends were voted by the directors. The bequest of shares of stock in trust and the bequest of realty in that form cannot be disregarded. (*Matter of Auditore, supra; Matter of Brown*, 130 Misc. 865, 876, and cases cited.)

The objectors also contend that the real estate assets owned by the company can be handled, distributed and controlled by the executors. The control of the assets of the corporation is in the stockholders and in the board of directors pursuant to their vote by resolution. The shares of stock are only the evidence of a right to receive a dividend and a share on a distribution of the assets. Elements of negotiability of corporate stock lacking at common law can be supplied by the Personal Property Law. The Legislature has declared the public policy of the State with respect to the transfer of stock certificates and their evidence of title to the property right. (*Pierpoint* v. *Hoyt*, 260 N. Y. 26, 28; *Turnbull* v. *Longacre Bank*, 249 id. 159, 164.)

The testator, in forming the corporation, must have had in mind the advantages of such a method in the settling of his estate and the ease of division of the shares of stock and the avoidance of expense in a partition action. The purpose of the corporation contemplates a purchase and sale of real property as part of its usual business dealings. (*Matter of Langdon*, 139 Misc. 379, 382.)

The court finds against the objectors upon all the objections, and dismisses the objections.

Submit decree upon the accounting.