ELIZABETH A. DENIKE et al., Respondents, *v.* CHARLES J. HARRIS et al., Executors, etc., Appellants.

The creator of a trust requiring the investment of money may designate how the investment may be made and what security may be taken, and he may dispense with all security.

D., defendant's testator, prior to his death was a special partner of the defendant R., having contributed $15,000 to the capital of the copartnership. The will of D. directed his executors to allow R. "to retain as a loan to him" out of the testator's personal estate, the sum of $15,000, which was specified as being the amount so invested in the business, "to be used and employed by him in carrying on and conducting the said business," for a term at the option of R., not exceeding three years, upon his paying annual interest at the rate of five per cent, with a further direction to said executors "at the expiration of said time or sooner determination thereof at his option aforesaid" to receive from R. the said sum with interest, and to discharge him fully from all further liability on account or by reason of such indebtedness;" and upon such payment the principal was directed to become part of the testator's residuary estate. The testator left a large estate, the defendants as his executors were authorized to sell and dispose of the realty, and to sell and convert into money the personalty. In the inventory of the testator's estate filed by the executors, his interest in the partnership was appraised at $14,000. In an action brought by the residuary legatees to restrain the executors from making the loan to R. unless he gave security, *held,* that it was not the intent of the testator that R. should give security; and that the action was not maintainable.

*Denike* v. *Harris* (23 Hun, 213), reversed.

(Argued January 28, 1881; decided February 8, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 14, 1880, affirming a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term. (Reported below, 23 Hun, 213.)

The nature of the action and the facts appear sufficiently in the opinion.

*S. P. Nash* for appellants. If Reeves took the $15,000 as a loan, the testator's estate became relieved from liability as partner, and Reeves became debtor to the estate, paying interest.

(2 Lindl. on Partn. 806; *Barfield* v. *Loughborough*, L. R., 8 Ch. App. 1; *Vyse* v. *Foster*, L. R., 7 Eng. & Ir. App. Cas. 318; *Hutton* v. *Rossiter*, 7 De G., M. & G. 9.) There was not in fact, though the will so assumes, any personal indebtedness from Reeves to the testator. (*Barfield* v. *Loughborough*, L. R., 8 Ch. App. 3.) On the death of one partner, the survivor is entitled to wind up the business; the assets vest in him. (Collyer on Partn., § 129.) No partner can, by his will, deprive the survivor of this right of administration, and it is only in case of mismanagement or improper conduct on the part of the surviving partner that a court of equity interferes, by appointing a receiver, to wind up the concern. (*Evans* v. *Evans*, 9 Paige, 178.) The testator's interest can be got out of the assets only by a liquidation, and can be got out immediately only by a forced sale. (Collyer on Partn., § 129.) If this be done through a receiver, the assets will be sacrificed, and the executors will receive only such a proportion of the residue as will result from the liquidation and without interest. (*Barfield* v. *Loughborough*, L. R., 8 Ch. App. 1.)

*Homer A. Nelson* for respondents. If the will provided for a loan of the $15,000 by the executors to Reeves, security should be required. (*King* v. *Talbot*, 40 N. Y. 76, 88; *Vernon* v. *Vernon*, 53 id. 363.) This being a pecuniary bequest for a certain period, with a limitation over, the executors are bound to protect the interest of those in remainder by requiring security from the first taker. (*Langston* v. *Ollivant*, Coop. 33; *Stuart* v. *Stuart*, 3 Beav. 430; *Pechel* v. *Fowler*, 2 Anst. 550; *Mortlock* v. *Buller*, 10 Ves. 308–9; *Lord Mahon* v. *Earl Stanhope*, 2 Sug. on Pow. 512; *Cowgill* v. *Lord Ormintoun*, 3 Y. & C. 369; *Watts* v. *Gridleston*, 6 Beav. 188; *Moseley* v. *Marshall*, 22 N. Y. 200; *Briggs* v. *Earl, etc.*, 19 Jurist 817; *Freeman* v. *Cook*, 6 Ired. Eq. 376; *Woodman* v. *Good*, 6 W. & S. 169; *Whitfield* v. *Bennett*, 2 P. Wms. 242; *Marker* v. *Marker*, 9 Hare, 1; *Davis* v. *Lee*, 6 Ves. 786; *Swan* v. *Leigan*, 1 McCord's Ch. 227; *Boswell* v. *Morehed*, 1 Busb. Eq. 26; *Frazer's Adm'r* v. *Buill*, 11 Gratt. 9; *Foley*

v. *Burnell*, 1 Bro. C. C. 279; *Woods* v. *Sullivan*, 1 Swan,
507; *Wootton* v. *Burch*, 2 Md. Ch. 190; *Smith* v. *Ostrander*,
64 N. Y. 278; *Tyson* v. *Blake*, 22 id. 563; Story's Eq. Jur.,
§§ 845–845a; *Vernon* v. *Vernon*, 53 N. Y. 351–363; *Dewitt*
v. *Schoonmaker, Exr.*, 2 Johns. 245–6; *Lenpton* v. *Lenpton*,
2 Johns. 628; *Clark* v. *Clark*, 8 Paige's Ch. 160; Court in
*Covenhoven* v. *Shuler*, 2 id. 122–132; 2 Story's Eq. Jur., § 845;
*James* v. *Scott*, Ala. 578; *Emmons* v. *Cairns*, 2 Sandf. Ch.
369; *Van Duyne* v. *Vreeland*, 1 Bresl. [N. J.] 142; Will-
ard's Eq. Jur. 328–330; *Prinscilla Kuinard* v. *Sharp &
Jones, Exrs.*, 5 Watts [Penn.], 108; Abridgement Equity
Cases, 360, part 4; 1 Chan. Cases, 199; *Jolly* v. *Mills*, 2 Chan.
Cases, 137; 2 Chan. R. 151; *Ferrance* v. *Prentice*, Ambler,
273; *Walker* v. *Cook*, cited in 1 Bro. C. C. 105; *Green* v.
*Pigott*, id.; *Henderson* v. *Vaulk*, 10 Yerger, 30; Willard's Eq.
Jur. 330–1; *Tyson* v. *Blake*, 22 N. Y. 558; *Munch* v. *Coch-
erell*, Myl. & Cr. 178; *Kyle* v. *Barnett*, 17 Ala. 306; *Elmen-
dorf* v. *Lansing*, 4 Johns. Ch. 565.)

EARL, J.   For some time before his death the testator was
a special partner of the defendant in the business of selling
agricultural implements; and as such special partner he had
contributed to the capital of the partnership the sum of $15,-
000.   On the 1st day of January, 1879, an account then taken
of the assets and condition of the partnership showed his inter-
est therein to be the sum of $17,908.   On the 17th day of
July thereafter he made and published his will, in which he
nominated his partner, Reeves, and the defendant Harris as
his executors; and he died on the 6th day of September, 1879.
The will was subsequently admitted to probate, and the execu-
tors qualified and entered upon their duties as such.   The
testator's personal property amounted to over $142,000.   In
his will he gave various legacies, to be paid within three years
after his death, and he bequeathed to his executors the sum of
$11,500 in trust, to apply the income of a portion thereof dur-
ing a minority and of another portion thereof during a life
designated, and at the expiration of the trust he gave the

principal sum to persons designated. He empowered his executors to sell all or any of his real estate, and to sell and convert into money, at public or private sale, his personal estate, for the purpose of paying debts and legacies and making distribution among the residuary legatees. He also directed and empowered his executors to sell and dispose of any and all vessels owned by him at his decease, whenever they deemed it for the best interests of his estate, and provided that they should in no manner be held accountable for the loss or depreciation in value of such vessels. The tenth clause of the will, which gave rise to the present controversy, is as follows: " It is my will, and I do hereby order and direct my executors, hereinafter named, to allow my friend, Robert C. Reeves, to retain, as a loan to him out of my personal estate, the sum of $15,000, being the amount now invested by me in the business carried on and conducted by him, and in which I am a special partner, to be used and employed by him in carrying on and conducting the said business, and to be continued from year to year at the option of the said Robert C. Reeves, but not to exceed the term of three years, upon his paying the interest thereon annually at the rate of five per cent per annum. Such income, when received by my said executors, to be from time to time paid over to my residuary legatees, and at the expiration of said term, or the sooner determination thereof at his option aforesaid, I direct my said executors to receive from the said Robert C. Reeves the said sum of money and interest, and to discharge him fully from all further liability on account or by reason of such indebtedness, and upon such payment being made to my said executors, the said sum of $15,000 is to become a part of my residuary estate, and to be distributed according to the provisions of this my will with respect thereto."

In the inventory of the testator's estate, filed by the executors after his decease, his interest in the partnership with Reeves was estimated and appraised at $14,000.

The plaintiffs, two of the three residuary legatees named in the will, for themselves and the other residuary legatee, com-

menced this action to restrain the executors from making the loan to Reeves mentioned in the tenth clause of the will, without requiring of him security therefor. They alleged in their complaint, among other things, that the executors proposed and intended to make the loan without taking security; that the business in which Reeves was engaged was one peculiarly of great risk, and that he had but little or no property. The defendants in their answer, among other things, denied that the business of Reeves was one peculiarly of great risk, as alleged in the complaint, and they denied that he had little or no property, and alleged that he was and had at all times been solvent and able to pay all his debts.

The court, at Special Term, found, upon the allegations in the complaint and answer above specified, without any proof, that the business in which Reeves was engaged was one of risk — not that it was peculiarly risky, or more risky than other kinds of commercial or mercantile business. He also found that Reeves intended to use the money, if loaned to him, in his business, and that it would thus be at risk, peril and jeopardy, and liable to be lost; that the executors intended to loan him the money, and refused to take any security therefor, although they had been requested to do so by the plaint iffs. And the court ordered judgment for plaintiffs, among other things, that the executors should not loan the $15,000 to Reeves, or permit him to retain that sum, as provided in the tenth clause of the will, without requiring and obtaining from him sufficient and proper security for the safe payment and return of the sum thus loaned or retained at the end of the three years. The judgment thus ordered was, upon appeal by the defendants, affirmed at the General Term, and then they appealed to this court.

The claim of the plaintiffs, which has thus far been sustained by the Supreme Court, is, that in making this loan, the defendants are in the position of all trustees authorized to loan trust funds, and that they are bound by the general rules of law to take proper security. That rule is supposed to require trustees exercising a general authority to make investments to

take government or real estate securities. (*King* v. *Talbot*, 40 N. Y. 76.) But the creator of a trust requiring the investment of money may designate how the investment may be made, and what security may be taken, and he may dispense with all security. The question here is, did the testator intend that Reeves should give security for the sum to be retained by or loaned to him? We think it clear that he did not. He appointed him one of his executors without requiring him to give security, investing him as such with large discretion over a large estate, to be exercised during a long period of time. He evinced entire confidence in his sound judgment, capacity, integrity and solvency. He called him "his friend," knew him well, had for a considerable time been associated with him in business, and was well acquainted with the business in which he was engaged and the risks incident thereto. He had invested in that business $15,000, and intrusted it to the management of Reeves without, so far as appears, any security. He evidently did not want the business broken up and Reeves and his own estate subjected to the loss which might be caused by closing it up in the ordinary way required by law. He meant also to favor Reeves by giving him the use, during the time mentioned, of the money which he had invested in the business, so that he could continue the business if he desired to. If Reeves were required to give the security exacted, the loan would be no favor to him. He might not be able to give such security; and if he could, he could borrow the money without difficulty of other lenders. The language used precludes the idea of security. As executor he was required to give no security. The property was then in his hands, and as surviving partner he was required to give no security. He was to be allowed "to retain" the sum named. If the testator had intended that security should be exacted for the loan, that matter would have been in his mind and probably expressed. Here then the testator designated the person to whom the loan should be made and the rate of interest, and under such circumstances and in such language, that we think it was intended that the loan should be without security.

It matters not that the sum thus loaned is put in some jeopardy — subjected to such risks as ordinarily attend the carrying 'on of any business or the loaning of money upon merely personal security. The testator contemplated such risks, and was willing his executors should take them. It does not appear that the financial condition of Reeves had changed any since the making of the will. So far as appears, he had the precise responsibility which the testator contemplated when he made his will. The fact that the partnership interest was inventoried after the testator's death at a less sum than it was supposed to be worth on the prior first day of January is not a very significant fact. It does not appear that the appraisals at the two dates were made by the same men or upon the same basis. The fact that the interest was inventoried at $14,000 is not conclusive that it might not be made to produce more, if settled as contemplated by the testator.

Our decision is based upon the facts as they now appear. The sum to be loaned was for use by Reeves " in carrying on and conducting" his business. He could not claim the loan for any other purpose. If he was actually insolvent, or if for any other reason he was not in a condition to go on with his business, he could not claim the loan.

We are, therefore, of opinion that no case was made justifying the decision rendered herein, and the judgment should be reversed and a new trial granted, costs to abide event.

All concur, except RAPALLO, J., absent.

Judgment reversed.