BOYLE et al. v. JOHN BOYLE & CO., Inc. (two cases).

(Supreme Court, Appellate Division, Second Department. January 14, 1910.)

1. WILLS (§ 683*) — TESTAMENTARY TRUSTS — CREATION OF CORPORATIONS — RIGHTS OF TRUSTEES.

Testator gave his residuary estate to trustees in trust, directed the creation of a corporation of his business, empowered the executors and trustees to sell real and mineral estate, and to invest the proceeds or the mineral lands uncontroverted and the personal estate in stocks and bonds of the corporation formed, and provided that the stock of the corporation should be voted by the executors and trustees as directed by persons named acting as directors. The corporation was formed and a large part of the residuary estate was delivered to it by the executors, who received the entire stock of the corporation in exchange and the executors and trustees hold such stock. *Held,* that the corporate stock constituted the trust property, title to which was in the trustees, and the trustees did not have title as such to the property transferred to the corporation which must be managed according to law; the directors thereof having the right to manage it.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1603–1606; Dec. Dig. § 683.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. WILLS (§ 514\*)—CREATION OF CORPORATION—POWERS.

> Where a testator directed the creation of a corporation to which a part of his estate should be transferred, he meant the creation of a legal entity as the statute directs to be conducted pursuant thereto with the powers and subject to the restraints placed thereon thereby.

> [Ed. Note.—For other cases, see Wills, Cent. Dig. § 1109; Dec. Dig. § 514.\*]

Appeal from Special Term, Kings County.

Consolidated actions by Phœbe A. D. Boyle and another, executors and trustees of John Boyle, deceased, against John Boyle & Co. From a judgment for plaintiffs in each action, defendant appeals. Reversed, and new trial granted.

Argued before WOODWARD, JENKS, BURR, THOMAS, and RICH, JJ.

Charles Strauss (Eugene D. Boyer, on the brief), for appellant.
Delos McCurdy, for respondents.

THOMAS, J. The respondents' brief states:

"The plaintiffs, as executors and trustees under the last will and testament of John Boyle, deceased, brought these actions to recover from the defendant a sum equal to six per cent. (6%) on the capital invested in the business conducted under the name of John Boyle & Co., Incorporated, by the defendant, a domestic corporation, and the balance of the income for the year 1908 withheld from plaintiffs, contrary to the provisions of Mr. Boyle's will."

In action No. 1 the court found:

"The sum of forty-five thousand ($45,000) dollars in the possession and under the control of the defendant is impressed with the trust created by the last will and testament of John Boyle, deceased, for the benefit of his widow, and that it be paid over to the plaintiffs as executors and trustees under the said testator's will, to be by them applied and paid over as therein directed.

"Second. That defendant be directed to pay the said sum to the plaintiffs as executors and trustees aforesaid, with interest from January 1, 1908."

In action No. 2 the court found:

"First. That the sum of eighty thousand and forty-five and 79/100 ($80,-045.79) dollars in the possession and under the control of the defendant is impressed with the trust created by the last will and testament of John Boyle, deceased, for the benefit of his widow and children, that it be paid over to the plaintiffs as executors and trustees under the said testator's will to be by them applied and paid over as therein directed.

"Second. That defendant be directed to pay the said sum to the plaintiffs as executors and trustees aforesaid, with interest from January 1, 1908."

The will provides:

"Fourth: All the rest, residue and remainder of my estate, both real and personal, I give, devise and bequeath to my trustees hereinafter named, in trust, nevertheless for the uses and purposes hereinafter set forth.

"Fifth: I direct that my executors and trustees dispose of the principal of said residuary estate and apply and pay over annually the income arising therefrom as follows: To my wife, until her death or re-marriage from the income from my business, conducted under the name of John Boyle & Co., whether incorporated or not, a sum equal to six per cent. (6%) on my capital invested therein, and, in addition thereto, one-fourth (¼) of the re-

maining profits coming to my estate therefrom (for 'the purpose of this paragraph, my real estate used or acquired in the course of the said business shall be deemed a part of my capital invested therein) and also, to my wife, three-fourths (¾) of the income from all other sources and the remainder of the income to my children pro rata, and in the event of the re-marriage of my wife, then and thereafter, during her life, to pay the whole income from my said residuary estate to my wife and my children, equally, per capita. On the death of my said wife, to divide said residuary estate into as many equal parts as I shall then have living children, and to pay the income arising from one of such portions to each of my said living children during his or her natural life, and on his or her death to pay the principal of his or her descendants per stirpes et non per capita.    *    *    *

"Sixth: If not done before my death, I direct my executors hereinafter named. to cause the business now carried on by me under the firm name of John Boyle & Company, to be incorporated under the direction of my wife Phœbe A. D. Boyle, John H. B. Boyle, John Neuscheler, Charles D. Silleck, Frederick R. Thorns and Wilbur F. Randall or such of them as will act as Directors, retaining also, if possible, in the employ of the Company, Charles E. Fitch, E. Clapp, A. Johnson, John Sullivan and George Reynolds. In the incorporation of any Company as above directed, whatever is done shall be done with the approval of my wife or such of the directors above named as shall serve, or a majority of them.

"Seventh: I hereby authorize and empower the executors hereof and trustees hereunder from time to time and in any one year to advance to my wife out of the whole income which may be received from my said business or interest therein, not to exceed the sum of ten thousand dollars in excess of her share of the income, which shall be subsequently repaid from or accounted for and charged against her share of the income from my estate. The provisions made for my wife under this will are in lieu of dower.    *    *    *

"Tenth: I hereby authorize and empower my executors and trustees hereinafter named, their survivor or successors to sell at public or private sale and to let or lease and collect the rents from all or any of my real estate and to execute the necessary papers therefor and to invest and keep invested all my personal estate or the proceeds of my real estate in such securities as may be authorized by law for the investment of trust· funds, for se-.curities in which they may be invested at the time of my death or in stocks, bonds or other securities of any corporation formed to succeed to ·my business now carried on under the name of John Boyle & Company, or the successor of such corporation, but in case the capital invested in any corporation continuing my said business' shall fail to earn and .pay a dividend or income of at least five per cent. per annum, net, over and above all expenses and salaries for three consecutive years, I direct that such stock or securities be sold or the corporation be wound up as in the judgment of my executors or trustees shall be most likely to produce the greater sum of money. In case it shall be deemed wise by my executors or trustees, they may incorporate my mineral real estate interests or sell or exchange the same for stock, bonds or other security of a corporation to be organized by them or any other corporation and take and hold such securities as investments for my estate but not in excess of the sum realized from said mineral lands after the payment of the legacies out of such fund.    *    *    *

"Fourteenth: That the stock of the corporation organized to continue my business, now carried on under the name of John Boyle & Company, shall be voted by the executors and trustees as directed by the six persons above named to serve as directors of said proposed corporation or their survivors or such of them as shall consent to act as directors and in the event of their disagreement and the dissent of any two of their number, the stock shall be voted as the corporate executor or trustee shall deem best."

The defendant was incorporated pursuant to the direction contained in the last will and testament of John Boyle, deceased, on or about September 28, 1905. Thereafter a large part of the residuary estate

of John Boyle, deceased, was delivered by Phœbe A. D. Boyle and John Neuscheler, acting as a majority of the executors, to the defendant, and the defendant received the same and delivered to the said executors the entire capital stock of the corporation in exchange therefor, and has ever since held and now holds, and uses, the said property and assets in its business as the capital thereof. The plaintiffs as executors and trustees aforesaid are the owners and holders of every share of the capital stock of the defendant corporation. During the first two years of its business, the company earned and paid to the executors 16 per cent. upon its capital, and accumulated in the form of merchandise, accounts, fixtures, and increase of property generally a surplus of $80,045.79 in addition to $20,000 reserved for bad debts. During the years 1907 to 1908, owing to the financial conditions which prevailed during that year, sufficient profits were not obtained from said business to warrant the declaration of a dividend by the directors, and therefore no dividends were declared. The evidence is that the whole sum reserved is $100,045.79. In action No. 1 the finding is that the defendant be directed to pay the plaintiffs $45,000 coming into possession of the defendant prior to September 28, 1908, while in action No. 2 the finding is that the defendant pay the plaintiffs $80,045.79 coming to the defendant prior to the same date. These sums total $125,045.79, which is in excess of the reserve. But I understand that the $45,000 is a part of the $80,045.79, and that the court allowed the defendant to retain $20,000 reserved for bad debts. To comply with the decrees, the defendant must derive the sum demanded from tangible property and accounts in which it exists, to which end these classes of property must be reduced to money. In other words, the business of the company has expanded so that its varied properties exceed its capital by the sum named, and it is the excess that the court has in effect directed to be reduced to money and paid to the plaintiffs. Shrinking its credits and stock carried might be a delicate or even perilous undertaking. It would have been so during the embarrassing times of 1907 and 1908. Certain of the surplus is in the "increase of property generally." This may mean that the property represented by the capital has increased in value, and, if so, the decrees would mean that the increment was income, and require that the corpus be decreased to the value of the nominal capital for the purpose of making the imposed payments. The uncertainties attending the situation of the property indicate that the court could not beneficially assume the duties of the directors and supervise the conduct of the corporation. If this should be attempted, it should be in an action directed to that purpose. But I pass to the indubitable contention that this property, in whatever form it may be, is a specific part of the trust estate, and as such payable or deliverable to the trustees. As I understand the plaintiffs' argument, it is that the residuary turned over to the corporation was property theretofore held in trust, and to which the trustees had title, and this is undisputed; that it could not be conveyed or transferred to the corporation so as to be relieved from the impress of the trust, inasmuch as that would be in contravention of the trust and the directions creating it. This claim will not bear examination.

The will gave the title to the trustees. It directed an incorporation of the testator's business. It empowered the executors and trustees to sell the real estate and mineral estate, and to invest the proceeds or the mineral lands unconverted, and also the personal estate "in stocks, bonds, or other securities of any corporation formed to succeed to my business now carried on under the name of John Boyle & Company." But to do this the specific property received by the trustees and to which they had title or the proceeds thereof must be turned over to the corporation in exchange for its stock or bonds. Thereby the property would pass out of the trust and the title would pass from the trustees to the corporation, if it took the property direct, or, if so sold to another, then to such other. . The trustees could not sell the title and keep the title. The property could not be a part of an express trust, and yet vest in title in the person to whom it was sold, and, if it passed out of the trust and vested in another, there is no way whereby it could be declared reinstated in the trust, except the way pointed out by the will. It was not in contravention of the trust to vest the title in the corporation and divest the trustees of the title, for that was just what the will contemplated. What was intended is clearly expressed, and what was done was a precise execution of the will. The trustees took the specific property out of the trust by transfer to the corporation, and received in allowed substitution the stock of the corporation, which at once fell under the trust provisions and exists subject to all its terms. Are the shares a part of the trust property? Have the trustees title thereto? Such must be the case. How, then, could the property of the corporation, represented by the shares, also be a part of the trust property to which the trustees have or in equity should have title? Instead of measuring their rights by the shares, instead of submitting to and obeying the fourteenth paragraph of the will, the trustees leap over and disregard them, and seek a control, possession, and title that would have belonged to them if no transfer and investment in the corporation had been made, but which the will and law both deny them. Whatever the testator directed done, he presumably intended to be done pursuant to and in subjection to the law of the state. When he directed the creation of a corporation, he meant a legal entity coming into being as the statute directed, to be conducted pursuant thereto, having the powers and subject to the constraints placed thereon by the statute. He intended that the directors thereof should be amenable to and obey the law. He did not intend, he did not suggest, narrowing their capacities or duties so that they would disobey the law, so that they would in the conduct of the corporation use less judgment, wisdom, discretion, or power than the law contemplates. What other directors may legally do they were endowed with ability to do, and yet, if the plaintiffs' contention is true, they are the creatures of the will and not the statute. It is the will that commands them. It is the will that circumscribes their powers, so that the usual legal ability to create a reserve is taken away. It is the will that fixes the tenure of the property of the corporation. In my judgment the will does not seek to constrain them, but merely directs that a corporation such as the law contem-

plates be formed, that to it the trust property be transferred, and that the corporation be conducted only as the law commands.

The judgments should be reversed and a new trial granted, costs to abide the final award of costs. All concur.