In the Matter of the Petition of PETER DOELGER, CHARLES P. DOELGER and CHARLES TSCHANETT, as Trustees under the Last Will and Testament of PETER DOELGER, Deceased, for the Benefit of MADELINE MORSCHHAUSER (Trust No. 4), MATHILDA HUEPFEL (Trust No. 5), MARY DOELGER (Trust No. 6) and CECILIA DOELGER (Trust No. 7) Respectively, for the Judicial Settlement of Their Intermediate Accounts of Proceedings as Such Trustees and for Leave to CHARLES P. DOELGER to Resign as Such Trustee of Each of Said Trusts.*

CHARLES TSCHANETT, WILLIAM E. P. DOELGER, CHARLES P. DOELGER, Individually and Each as Trustee, etc., of PETER DOELGER, Deceased, and CENTRAL HANOVER BANK AND TRUST COMPANY, as Executor, etc., of PETER DOELGER (JUNIOR), Deceased, Appellants; JOHN W. HANNON, Special Guardian for EDWARD G. KUSER and Others, Respondent.

First Department, May 13, 1938.

---

* Revg. 164 Misc. 590.

*Sydney Krause* of counsel [*Edmond N. Cahn* with him on the brief; *Krause, Hirsch & Levin,* attorneys], for the appellants Charles Tschanett, William E. P. Doelger and Charles P. Doelger.

*Hersey Egginton* of counsel [*Larkin, Rathbone & Perry,* attorneys], for the appellant Central Hanover Bank and Trust Company, as executor, etc.

*John W. Hannon,* special guardian, respondent.

*H. Maurice Darling,* for Marie Louise Bridgett, Loretta M. Horn and Anna D. Kuser, adult remaindermen.

Dore, J. In this voluntary accounting by testamentary trustees, the surrogate, sustaining objections of the special guardian, has surcharged the trustees for certain investments in securities not authorized by law for investment of trust funds. The challenged investments were made not by the trustees as such but by them as directors of a corporation, to which the entire residuary estate had been transferred pursuant to directions in the testator's will. The investments were made in common stocks and parcels of realty and were all within the stated powers of the corporation and the authority of the directors as such unless the corporation was restricted to legal investments only.

The issue for our determination is whether the corporation and its directors were so restricted.

Peter Doelger, the testator, died a resident of the county of New York on December 15, 1912, leaving a last will and testament dated June 30, 1908, admitted to probate December 24, 1912. On that date letters testamentary were issued to Peter Doelger, Charles P. Doelger, sons of the decedent, and Frederick J. Feuerbach, a friend, who duly qualified as trustees of the trusts created.

The testator, in article ninth of his will, directed that, if at the time of his death he was engaged in the brewing business in which he was engaged at the date of the execution of the will, his executors should (1) continue the business after his death, (2) form a corporation under the name of Peter Doelger Brewing Company of which his executors should be directors, with such capital stock as they deemed proper, (3) transfer to such corporation the whole of his residuary estate including the good will of the brewing business, and (4) receive in exchange therefor the entire capital stock of such corporation. He further directed that on the formation of the corporation the by-laws to be adopted should provide, among other things, that no officer of the corporation should receive a salary of more than $20,000 a year; that corporate checks and drafts should be signed by at least two officers; that promissory notes, conveyances or mortgages should not be issued except with the consent in writing of each director; and

" IV. That the proceeds realized from the sale of any real property of said corporation (other than * * * family residence and grounds) shall be again invested in real property appropriate for the business of the said corporation, or else in such manner and in such securities as may be permitted by law to an executor for investment. * * *

" VII. That no by-law embodying any of the foregoing provisions can be changed except with the approval of every director, for the time being, of such corporation."

In article eleventh the testator directed that the capital stock of the said corporation was to be divided into eight equal shares or separate trusts to be held by his executors in trust during the life of his widow and thereafter one share to be distributed outright to each of his three sons and one share to be held during the life of each of his five daughters and then distributed to the issue of each of said daughters respectively.

Pursuant to the directions in the will, the Peter Doelger Brewing Company, Inc., was incorporated May 1, 1913, and by-laws adopted in conformity with article ninth. Two thousand shares of capital stock were authorized and issued to the trustee and the trusts set up. The corporation took over the assets of the decedent's estate in consideration of the issuance of its stock and proceeded under the management of its directors (who were the same persons as the trustees under the will) to engage in the brewing business and in the purchase, sale, management and holding of stocks, bonds, mortgages and real estate from the date of its incorporation to June, 1929. At that time the brewing business having been materially affected by national prohibition, the directors decided to withdraw therefrom, sold the brewing business with the name " Peter Doelger Brewing Company, Inc.," changed the name of their corporation to Peter Doelger, Incorporated, and since that date the corporation has engaged in the operation of its real estate holdings and the management of other corporate investments.

The present accounting is from December 31, 1924, to November 15, 1936, at which latter date one of the trustees died. There have been prior accountings — by the executors in 1917; by the trustees on the widow's death in 1924; and there was also an accounting at the death of one of the testator's daughters in 1926. The executors' account in 1917 and the trustees' account in 1924 contained the same method of itemization of corporate investments as is annexed to the present account, the portfolio consisting in major part of non-legal investments, many of which have been retained since decedent's death and many of which represented new investments made by the corporate management. The accounting in 1924 related to all eight trusts. As several classes of infants were then potentially interested in the ultimate distribution of the principal of five of the trusts, the surrogate at that time appointed several special guardians to protect their respective interests. The character of the investments made by the corporation has never been questioned on any previous accountings by any of the numerous adults interested or by any of the special guardians appointed. In all prior accountings, the accounts showing the so-called non-legal investments were in each case judicially settled and approved by the surrogate.

On this accounting also none of the thirty adult beneficiaries cited filed any objection. Objections to certain investments were, however, filed by the special guardian appointed to represent one vested and thirty-one contingent remaindermen, infants.

Originally all, and during the period covered by the present accounting one-half, of the stock of the corporation was held by the testamentary trustees. The balance prior to this accounting has been distributed pursuant to the will "absolutely" to the remaindermen of certain of the trusts which had fallen in.

The special guardian restricts his objections to the items in the present accounting. The decree in the former accounting is res adjudicata as to matters adjudicated therein. (Megrue v. Megrue, 231 App. Div. 245.) He does not charge fraud, bad faith, misappropriation, negligent management, self-enrichment at the expense of the estate, or other similar waste of trust funds. The sole basis of his objection is that the trustees of the estate, who were also directors of the corporation formed pursuant to testator's directions, exceeded the legal and testamentary limitations placed on them when, as such directors, they invested corporate assets in non-legal investments. The special guardian's contention, sustained by the surrogate, is that the same statutory limitations upon investments imposed by law on the testamentary trustees were equally imposed on the directors of the corporation to which the estate assets were transferred.

The only expressed restriction in the will relating to investments by the corporation is the by-law above quoted which requires that the proceeds from the sale of any real property of the corporation shall be invested in real property appropriate for its business or " in such securities as may be permitted by law to an executor for investment." The will did not contain any such express limitation on investment by the corporation of the proceeds of the sale of personalty. It should also be noted that the stated basis of the special guardian's objections is that the investments challenged were not proper investments for trust funds under the law of the State of New York and the testator's will, not that they were made with the proceeds of realty. There is no objection that the questioned investments were made from the proceeds of the sale of corporate realty and there is no evidence that such investments were made with such proceeds. The petition for an accounting and the objections thereto are pleadings similar to a complaint and an answer and they define the issues and limit the relief. (Surr. Ct. Act, § 49; Matter of Kilborn, 232 App. Div. 580, 582; Matter of Hearns, 214 N. Y. 426, 432.) A surcharge may not be predicated on a ground neither alleged nor proved. Unless, therefore, the

limitations are implied by law, there is no basis for the surcharge made herein.

In the absence of express contrary authorization in a will, it is the duty of testamentary trustees to invest estate funds in securities authorized for investments by the statutes of this State. (Dec. Est. Law, § 111; Pers. Prop. Law, § 21.) If a testator vests in trustees a broader discretion the trustees will be protected so far as they strictly pursue the authority bestowed. (*Denike* v. *Harris*, 84 N. Y. 89; *Matter of Hall*, 164 id. 196.) Estate fiduciaries who hold as such stock of a corporation of which they are also officers, are responsible to the estate as well as to the corporation for damages resulting from fraud, embezzlement, misappropriation, bad faith or the violation of any legal direction in the testator's will. (*Matter of Auditore*, 249 N. Y. 335; *Matter of Gerbereux*, 148 Misc. 461, 466; *Farmers' Loan & Trust Co.* v. *Pierson*, 130 id. 110, 120.) These settled rules of law are not controverted by appellants. They concede them but contend, in our opinion properly, they are not applicable to the precise issue presented for our determination.

The ultimate basis of the special guardian's contention is that the testator's silence as to investment by the corporation of the proceeds of its personal property renders applicable to its directors all the restrictions impliedly imposed by law upon their investment powers as testamentary trustees. This contention, it seems to us, ignores a very important fact. The testator in this will made a complete provision for the investment of his whole residuary estate and directed its investment in the stock of the business corporation to be formed, clearly not a legal investment for trustees under the laws of the State of New York. Such direction to invest the whole estate in the stock of a corporation that is not a legal investment for trust funds makes wholly inapplicable the settled rule of law that in the absence of express contrary authorization it is the duty to invest solely in so-called legal investments. This direction was not, as has been suggested, a single exception; it was all embracing and included the whole residuary estate.

A clear distinction must be made between the powers and limitations of a corporation formed pursuant to directions in the will and the powers and limitations of a trustee appointed under the will. The testator designates his trustee and has power to give the trustee absolute and unlimited discretion in investments. As the testator has such power, if he does not use it and says nothing about the trustee's right to invest, the law limits the trustee to what are designated as legal investments. But the testator cannot either create, or confer powers on, a corporation. The sovereign alone has such power. And when on the executor's petition it

creates a corporation, the State and not the testator gives the corporation all the powers it possesses, including the powers of investment that are usual, legal and customary in such corporation. As the testator can give no power to the corporation, his silence does not keep from it any the law confers. In the case of the trustee, since the testator has the power to give discretionary authority in investments, silence means limitation. In the case of the corporation, since the testator has no such power, silence means the absence of limitation.

A stock corporation created under the laws of the State of New York, whether at the request of executors or of other persons, presumptively has all the powers conferred by section 14 of the General Corporation Law and article 3 of the Stock Corporation Law unless such powers are limited by the charter or by-laws. (Gen. Corp. Law, §§ 13, 14.) In directing the creation of the statutory entity the testator must be deemed to have intended the normal consequences of his act, namely, the creation of a corporation with all the powers conferred upon it by the statute governing its existence except as expressly otherwise provided against in the will. This the testator herein apparently knew. He did provide the restriction in the by-laws hereinabove mentioned, viz., that proceeds from the sale of real property should be invested in real property appropriate for the corporation's business, or in investments legal for trust funds. He made no limitation on investments of the proceeds of personalty. Consequently no such limitation exists thereon and accordingly any surcharge based on the violation of such claimed restriction was improper.

In *Boyle* v. *Boyle & Co., Inc.* (136 App. Div. 367) it was held that a testator, directing the creation of a corporation to which the assets of his estate were transferred in exchange for its stock, must, where the will is silent, be deemed to intend that the corporation and its directors shall have the normal statutory powers. In that case as in this, a corporation was formed at the testator's direction and its assets received from the residuary estate in exchange for all the corporation's stock. The issue was whether the directors of the corporation were precluded, as they would be in their capacity as testamentary trustees, from creating reserves out of income, although the creation of such reserves appeared advisable for business reasons. The unanimous opinion of the court answered both questions in the negative. The court said: " Whatever the testator directed done he presumably intended to be done pursuant to and in subjection to the law of the State. When he directed the creation of a corporation he meant a legal entity coming into being as the statute directed, to be conducted pursuant thereto,

having the powers and subject to the constraints placed thereon by the statute." This ruling was unanimously affirmed by the Court of Appeals (*Boyle* v. *Boyle & Co., Inc.*, 200 N. Y. 597). (See, also, *Matter of Langdon*, 139 Misc. 379, 382, 383.)

The cases relied on by the surrogate and the special guardian are not controlling on the issue before us and are not inconsistent with the ruling referred to. No case is cited for the rule on which this surcharge ultimately rests, namely, that when a testator directs his residuary estate to be turned over to a corporation the directors of which are the trustees under his will all the limitations the law imposes upon testamentary trustees are, by that very fact alone, imposed also upon the directors as such.

Some of the cases cited refer to actions between the promoters of a corporation arising out of promotion agreements in which it was held that the agreements were not void merely because they included provisions relating to the conduct of corporate affairs binding on the promoters after incorporation. (*King* v. *Barnes*, 109 N. Y. 267; *Lorillard* v. *Clyde*, 86 id. 384.) But in each case where a limitation was found to exist, it was affirmatively and expressly imposed.

Other cases relied on deal with (1) the admitted duty of a fiduciary holding a controlling stock interest in a corporation to disclose corporate activities, or (2) the liability of such fiduciary for waste of estate stock resulting from the fiduciary's violation of corporate rights, *e. g.*, misappropriation or dissipation of corporate assets. (*Matter of Auditore*, 249 N. Y. 335; *Farmers' Loan & Trust Co.* v. *Pierson*, 130 Misc. 110; *Matter of Gerbereux*, 148 id. 461; *Matter of Pulitzer*, 139 id. 575; affd., 237 App. Div. 808.) Thus in the *Auditore* case (*supra*) the fiduciary, an administrator of his brother's estate, held fifty per cent of the stock of the Auditore Contracting Company. He misappropriated all the assets of the corporation and applied them to his own use. For such breach of duty he had been held liable to the corporation in a stockholder's action but the judgment remained unpaid. The court properly held that the breach of duty to the corporation did not swallow up the breach of duty to the estate which resulted in a total loss of estate assets and for that he and his surety were held liable. It is clear that case has no application to the facts before us. Here there is no claim of faithlessness or misappropriation of any kind. The sole question is, were the directors *qua* directors restricted to " legal " investments? That question was not there presented or decided.

The same may be said of the other cases cited; they are not controlling on the issue before us. In *Farmers' Loan & Trust Co.*

v. *Pierson* (*supra*) the trustees contended that an *explicit* limitation on their power to sell real estate requiring the consent of the beneficiaries was invalid. They also contended that the court for an accounting of their acts must be satisfied with a bare statement that they held a certain number of shares of stock and received a certain number of dividends. The trustees in the case at bar admit that any express limitation would bind them. They rightly insist that they have not transcended any such limitation. Repeatedly they have voluntarily given full and complete accounts of their proceedings to the Surrogate's Court and make no contention that they are not fully subject to its jurisdiction though for some reason the learned surrogate in his opinion repeatedly intimates they make such claim.

In *Matter of Gerbereux* (*supra*), misuse, spoliation and waste of estate assets were alleged, arising out of conflict in the duties of the trustees with their personal interests. That case cannot be controlling here, where the honesty, integrity and good faith of the accounting parties are conceded and no claim whatever is made of any misappropriation or malfeasance.

*Matter of Pulitzer* (*supra*) stands for the doctrine that an implied power of sale may be read into a will to prevent destruction of estate assets. The surrogate authorized the sale but refused to approve specific terms of the contract of sale. No such issue is here presented.

It is unnecessary to examine in detail other cases relied on. They are not in point.

But that is not all. In the will before us the only restriction on the corporation's power to invest was embodied in the by-laws dictated by the decedent and related to the proceeds of realty. At the testator's express direction these by-laws contained a provision that they might not be changed " except with the approval of every director." By clear and necessary implication this provision authorized the change with the approval of every director. The testator, therefore, authorized his directors to amend his own plan provided they acted unanimously. Every one of the challenged investments was made with the unanimous concurrence or acquiescence of all the directors. They acted unanimously. They insist that their unanimous action in making corporate investments constituted a *pro tanto* amendment of the by-laws. The learned surrogate overruled this, saying that the by-laws have never been amended " by any formal action." In the light of the facts and circumstances disclosed, this is unduly to exalt form above substance. The Peter Doelger Brewing Company and Peter Doelger, Incorporated, each was a closely held family corporation. In good

faith the directors believed they had the power to make the investments challenged. They knew that if that power were questioned they could unanimously amend the by-laws. They acted unanimously in making all such investments. This action consistently maintained for nearly a quarter of a century without objection from any one but with express approval on prior accountings should be deemed an amendment of the by-laws at least where, as here, the rights of third persons having business dealings with the corporation on the faith of by-laws as formally unamended are not in question. Forms of procedure should not be made more important than the purpose they seek to accomplish. (See *Clark* v. *Kirby*, 243 N. Y. 295, 301.) The testator said that the one limitation regarding investment of the proceeds of realty could be changed if all the directors agreed to do so. In each case of the investments here challenged they did unanimously agree to do so, even if there were proof, and there is none, that any of the questioned investments were made with the proceeds of realty.

Article fifteenth of the will, providing what would take place if the testator prior to his decease had conveyed his brewing business to a corporation, is relied on as evincing an intention contrary to the construction herein made. Concededly prior to his decease the testator did not convey his brewing business to a corporation organized by him for the purpose of continuing it. A will is ambulatory. It takes effect as of the death of the testator. As the corporation was not organized prior to his decease, we must read the will in the light of the disposition of the residuary estate that was actually made pursuant to the testator's directions, viz., the transfer of the entire residue to the corporation to be formed after his death.

In article eighteenth the testator provided (1) that, until the formation of the corporation, his executors could hold any investments he had; and (2) that they could invest any trust funds which they may hold " as such executors and trustees " in the purchase of the stock of the corporation. It will be noted that these are grants of authority to the trustees and executors as such. They do not purport to add to or take from the corporation any authority it might lawfully possess. The first, (1), was written in an abundance of caution. The testator evidently expected the corporation would take over and hold his investments substantially in the form he had made them, but he also wished to be sure that, in case of delay in forming the corporation, his executors would not be forced to sell such investments, which were not legal investments in their hands *as executors.* The second, (2), is likewise a grant of power to the executors and trustees " as such." Evidently

the testator and the careful draftsman of his will fully understood that once the estate was transferred to the corporation it would have authority and power to retain all these investments and make others, except only to the extent that the testator expressly limited its powers.

The decedent left an estate valued at approximately $9,600,000, of which fifty-eight per cent was real and forty-two per cent personal property, the estate to a great extent consisting of brewery property, as the decedent had engaged in the brewing business for many years. The estate, however, also included the following property held for investment as distinguished from brewing purposes: numerous parcels of real estate amounting in value to approximately $1,644,175; listed stocks, $441,612; bonds, $290,677; mortgages on improved real estate, $180,000; a total of over $2,500,000. With few exceptions, the parcels of real estate set forth in the list of assets of Peter Doelger, Incorporated, in the present account, are the same parcels held by decedent at the date of death. Decedent's personal property at the date of his death consisted, with minor exceptions, of first and second mortgages, stocks, materials and equipment of the brewery, and bond investments. The personal property now held by Peter Doelger, Incorporated, is of the same nature, except for the elimination of the brewery equipment. As of September 30, 1935, the gross assets of the corporation were $8,384,585.28, of which amount approximately $5,000,000 was real property and over $3,000,000 personal property. The net worth as of that date was $8,255,578.51. The net worth as of September 30, 1936, was $8,255,215.15. In view of the unprecedented depression that so disastrously affected all values of real and personal property since the last accounting herein, these facts and figures indicate an administration unusual in its care, prudence, good judgment and exceptional success. The corporation has had an uninterrupted record of earnings from the time of its inception. Dividends at the rate of $244 per share were paid for some years prior to May 31, 1931. During the depression years the dividend was reduced by successive stages so that at the present time the company is paying $60 per share per annum. During no year did it fail to declare and pay dividends. The good faith, ability and fidelity of the appellants is conceded, as well as their successful administration.

The sole fault suggested upon which the accountants have been surcharged to the extent of thousands of dollars is that they made an honest mistake as to the extent of their powers of investment as directors. The surcharge is predicated on an entirely new

construction of the will suggested for the first time after nearly a quarter of a century's consistent course of action predicated on a different construction fully disclosed and approved by the court in prior accountings. We do not say this is binding on the infant remaindermen in this accounting. For the reasons hereinabove stated, however, we do hold on the merits that the powers of investment were not exceeded and that there is no basis either in the will or in law for the surcharge made herein.

The decree of the surrogate should be reversed in so far as it directs a sale of the challenged investments and surcharges the appellants and the matter remitted to the surrogate for further action in accordance with this opinion.

MARTIN, P. J., COHN and CALLAHAN, JJ., concur; TOWNLEY, J., dissents and votes for affirmance.

TOWNLEY, J. (dissenting). This is an appeal by the trustees of the estate of Peter Doelger from a decree in an accounting proceeding surcharging them with the loss resulting from certain investments in real estate, bank stocks, second mortgages and other securities not legal investments for trust estates.

The late Peter Doelger owned a prosperous brewing business and he also had large amounts of money invested in real estate, bonds, his private home, mortgages and selected common stocks. It was his desire to set up various trust estates for his children and for their descendants. The residue of the estate was left to trustees, but there was a contingent clause in the will. The testator said: " Should I, at the time of my decease, be engaged on my individual account in the brewing business in which I am engaged at the date of this my last will and testament, I direct my executors to continue the same after my decease, and I also direct them forthwith, and during the lifetimes of the two youngest children of mine, living at the time of my decease, to form a corporation under the name of the Peter Doelger Brewing Company, of which my executors shall be the directors, with such capital stock as they may deem proper, and to convey, assign, transfer and set over to such corporation, all the rest, residue and remainder of my estate, of whatever kind or nature the same may be, whether real or personal and wherever situate, including the good will of such brewing business and receive in exchange therefor the entire capital stock of such corporation."

The testator then specified that any real estate conveyed should be subject to any incumbrances, and conveyance of the family residence was subject to the life estate conveyed to his wife. It

was further provided that, if any legacies bequeathed by the will were unpaid at the time of the transfer of the estate to the corporation, the corporation should assume the payment and make it.

It is clear from this direction in the will (which is the only authority under which the trustees may act as directors of a corporation) that the object of the corporation was " to continue the same [the brewing business] after my decease." In fact, the entire scheme of a corporate administration was made expressly dependent upon his personally being in the brewing business at the time of his death. This corporation was, therefore, (1) to continue the brewing business as a part of the trust estate for a limited time, and (2) as a co-ordinate duty, to manage such part of the estate as is not necessary for the brewing business as trustees are expected to manage trust estates. The reference to the continuance of the corporation " during the lifetimes of the two youngest children of mine, living at the time of my decease " is not in the will for the purpose of measuring the trusts, since the trusts set up are all legal in themselves as to duration. The reference to the two younger children is meaningless unless it refers to the expected life of this corporation.

The general idea that the testator had in mind is made very clear from paragraph fifteenth of the will, which discusses another contingency. The testator said: " Should I, prior to my decease, have already conveyed my said brewing business to a corporation organized by me for the purpose of continuing such business, then the shares of the capital stock of said corporation which I may hold and the remainder of my residuary estate shall be divided into eight equal shares, each to be held in the same manner and upon the same trusts hereinabove respectively provided for in the eleventh paragraph hereof."

The testator thought of his brewing business and the necessary capital to run it as a separate item apart from his residuary estate. As appears from the accounting made in 1924, the trustees and directors also had such a separation in mind. The brewing business was capitalized at $200,000 and the residue of the property transferred to the corporation must have constituted a surplus. In 1929, when the business was sold, it brought $200,000, so that there was no nominal capital loss in disposing of the brewing business. The practical construction of the trustees and directors, therefore, has been to keep the business separate from the investments of the residue.

Had he ceased to be in this business or had he incorporated this company before he died and had paragraph fifteenth come into effect, obviously the assets of the estate not represented by the

stock of the brewery would have been kept either in the condition received or reinvested in legal securities. It cannot fairly be said that this testator's entire plan as to the investment of his estate not employed in the brewery business was to be controlled by the circumstance that his brewery business was incorporated before or after his death, *i. e.*, that if it was incorporated before his death, a conservative investment of his other assets was contemplated, while, if it was incorporated after his death, his estate was to be subject to the perils of unrestricted speculative investments.

Further light on the testator's intention is furnished by some of the by-laws which the will directed should be adopted. Of these, No. IV is particularly significant. It reads as follows: " IV. That the proceeds realized from the sale of any real property of said corporation (other than such family residence and grounds) shall be again invested in real property appropriate for the business of the said corporation, or else in such manner and in such securities as may be permitted by law to an executor for investment."

The " business of the said corporation," as used in this section, is the business of running a brewery which was the only business which was permitted under the will. It is stated in the briefs and is a matter of common knowledge that there was considerable competition between breweries in the acquisition of fee and leasehold interests suitable for saloons. By this section permission is granted to the trustees in the management of the brewery business to reinvest the proceeds of the sale of real estate in other real estate appropriate for the needs of the business. The testator, however, was careful to indicate that in the event such proceeds are not reinvested in real estate necessary for the conduct of the brewery business they should be invested " in such manner and in such securities as may be permitted by law to an executor for investment." There is thus expressed in this will a clear, consistent testamentary scheme. The testator intended that his brewery business should be continued and that the part of his estate which was not involved in that business should be conservatively invested in legal securities.

The testator's conservative attitude is again reflected in by-law No. V where he directs that the existing indebtedness against properties held by the corporation should be reduced at the rate of five per cent a year, thus indicating a purpose that, after the period fixed for the life of the corporation, they might be ready for distribution free and clear of debt.

In 1929 the necessity arose of disposing of the brewery business and discontinuing the one business which the trustees were authorized to conduct. The business was sold and that part of the

administration of these trusts, which involved the active conduct of a going business, was ended. The duty of the trustees from that time on involved nothing more than the simple administration of a testamentary trust. The fact that the assets of the trust were held by a corporation and their ownership was represented by stock did not change the essentials of the situation or enlarge their powers of investment. There was no authority whatever to change the certificate of incorporation of the brewing company and to reorganize the corporation so as to permit the trustees and directors to conduct any form of business.

After the sale of the brewery, nevertheless, the trustees sought to use the corporate form as authority for activities similar to those of an investment trust. They amended the charter of the corporation by expressly eliminating all the provisions authorizing the conduct of a brewery and substituted provisions so broad as to authorize almost any known business excepting a bank or an insurance company. They then proceeded to invest in bank stocks, second mortgages, real estate and similar speculative enterprises. Authority for this is said to be found in the simple fact that the testator sought, by using the corporate form, to insure the continuation of his brewery business. If the contention of the trustees is sustained, it must be deemed that, although the brewery business ends, there is still to be found in the corporate shell authority for activities involving such a radical departure from the normal conduct of trustees as may not readily be assumed to have been within the testator's intention. Such activities were certainly not possible under the certificate of incorporation as originally drawn and are clearly not within the powers conferred by this will.

Under the circumstances, the trustees must account to the estate for their conduct in the management of the corporate affairs of a company in which the principal of the trust is invested. (*Matter of Auditore*, 249 N. Y. 335; *Matter of Gerbereux*, 148 Misc. 461; *Matter of Kinreich*, 137 id. 735; *Matter of Pulitzer*, 139 id. 575.) In *Matter of Gerbereux* (*supra*) the court in its opinion said (p. 466):

" The surrogate has jurisdiction to inquire into the conduct of executors or trustees herein as directors of the corporation, and to hold them liable for any injury done the estate. (*Matter of Auditore*, 249 N. Y. 335; *Matter of Kinreich*, 137 Misc. 735; *Matter of Pulitzer*, 139 id. 575; *Matter of Boyle*, 140 id. 523.) * * *

" The internal corporate management may be scanned where its treatment by an executor or trustee is questioned and such executor or trustee is a director whose responsibility to the estate is questioned, not for the purpose of dealing with the corporation,

but to determine whether the fiduciary's acts have resulted in a depreciation of the stockholdings of the estate."

The rules by which the conduct of trustees acting as directors of corporations in which the principal of the trust has been placed must be judged are the same as those which would be applicable to their conduct had the principal of the trust remained in their immediate custody. If the trust *res* had remained in their immediate custody, there is no question but that the general provisions would prohibit investments such as are involved here.

The appellants claim that any restriction upon the investment by the trustees as directors must be expressly stated in the will, otherwise the directors are at liberty to invest in anything that offers the inducement of unusual profit regardless of how hazardous the venture may be or how disastrous its consequences. No statement of restrictions upon investments is required when the principal of the trust remains in the hands of the trustee. The statute supplied that. Why then should there be a different rule when the relation remains the same with a single exception that the *res* is held by a corporation and its investment is made by the trustees in their capacity as directors.

Where all the assets of a trust that are being given to a corporation are not necessary for the purposes of running the business of that corporation, it surely is the duty of testamentary fiduciaries to invest the balance of the funds in securities authorized for trust investments by the statutes of the State. Only to the extent that the tenor of the will demonstrates that the testator desired to vest in trustees a broader discretion will the trustees be protected and even then only in so far as they strictly conform to the authority bestowed. (*Denike* v. *Harris*, 84 N. Y. 89; *Matter of Hall*, 164 id. 196.)

In arguing to the contrary, namely, that anything can be done with a corporation unless a prohibition in words can be found against it in the will, appellants rely principally upon *Boyle* v. *Boyle & Co., Inc., Nos. 1 & 2* (136 App. Div. 367; affd., without opinion, 200 N. Y. 597). The facts of the *Boyle* case are entirely unlike those involved here. No question of investment in defiance of the statute was involved. What was involved therein was simply a conflict between what the plaintiff claimed due under the will and what was claimed to be necessary to carry out the provisions of the will which directed the continuation of the testator's business in corporate form.

The irrelevance of the *Boyle* case to the present issue is demonstrated by the opinion of BIJUR, J., in *Farmers' Loan & Trust Co.*

v. *Pierson* (130 Misc. 110), a case extremely significant in a consideration of the responsibility of the appellants. Pertinent statements from the opinion of Judge BIJUR are as follows:

" I come, then, to ask the significance of the particular claim made before me by these trustees who wish it decreed that in their accounting they stop at the point where they have become directors of a corporation. I lay aside for the moment the fact of the identity of persons, although it is not, I think, to be wholly disregarded in the final outcome. What meaning has their statement that they are directors of a corporation? Is this directorate a form of immunity? Is this position something within a ' veil? ' It seems to me that no one of the purposes or functions legitimately included in the general scope of incorporation has any relevancy to an accounting by these trustees. If the testator considered it useful or convenient to avail himself of any corporate faculties in the conduct of his business, I see no reason why that consideration should be allowed to interfere with his declared purpose to have his property cared for after his death by trustees for the benefit of certain named beneficiaries according to the ordinary rules relating to trusts. * * *

" There is nothing to the contrary in *Boyle* v. *Boyle & Co., Inc., Nos. 1 & 2* (136 App. Div. 367). There the court pointed out that instead of submitting to and obeying the will the plaintiffs were trying to disregard what the will had instructed them to do. There is a statement in the opinion substantially to the effect that testamentary instructions cannot supersede *positive mandates* of the corporation laws — a conclusion with which all must agree, but which is wholly irrelevant to the instant case."

The decree of the surrogate should be affirmed.

Decree reversed in so far as it directs a sale of the challenged investments and surcharges the appellants and the matter remitted to the Surrogate's Court for further action in accordance with opinion. Settle order on notice.