MAE J. WOLFER et al., Plaintiffs, *v.* NATIONAL CITY BANK OF NEW YORK, Defendant.

Supreme Court, Special Term, New York County, February 25, 1947.

*Abraham Lillienthal* for plaintiffs.

*Shearman & Sterling & Wright* for defendant.

GAVAGAN, J. This action was brought by Mae Jaffe Wolfer, the settlor and life beneficiary of an *inter vivos* trust, and others, against the National City Bank of New York, to compel the defendant trustee to restore to the corpus of the trust the loss in value of certain securities purchased by the trustee from its " securities affiliate ", in alleged disregard of the obligations of a fiduciary. Defendant counterclaims for judgment settling and allowing the trustee's account from its inception on October 3, 1927, to October 7, 1939.

In February, 1927, Belmont Wolfer with his wife, the plaintiff Mae Jaffe Wolfer, began to purchase securities from the National City Company. The securities were purchased through H. C. Ballou, an associate manager in charge of the 96th Street branch office of the National City Company, hereinafter called " the Company ". The purchases were paid for by withdrawals by Mrs. Wolfer from a savings account in her name in trust for a son, Sherwood, which was then open in the 96th Street branch office of the National City Bank, hereinafter called " the Bank ". Securities in the principal amount of $43,000 were thus ordered, in the name of Mrs. Wolfer, individually or in her name in trust for one or both of her sons. All of the securities were delivered to Mrs. Wolfer personally or by registered mail.

It appears that there was at least one conversation between Ballou and Mr. Wolfer in which the latter expressed the wish that in the event of his death a trust be formed for the benefit of his wife and sons.

On July 12, 1927, Mr. Wolfer was killed in an automobile accident. Soon thereafter, plaintiff's father, Samuel A. Jaffe, who conducted his own business, known as the Jaffe Products Company, in Havana, Cuba, arrived in New York City to protect plaintiff's interests. Jaffe, having had prior dealings with both the Bank and the Company in Havana and New York City, approved the suggestion that a trust fund be established for the benefit of his daughter and her sons with the Bank as trustee.

The plaintiff and her father conferred with one Torrance, a trust officer of the Bank, in regard to the principal terms of the proposed trust. A draft proposal was submitted to Jaffe and included clauses as to settlor's control of investments, settlor's joint right with her father of revocation, trustee's right to invest in nonlegals and trustee's right to deal with its affiliate. Before Jaffe accepted, and without any evidence as to whether such draft was also submitted to an attorney for the plaintiff, Jaffe was called back to Havana. Upon his return to New York City, Jaffe, Mrs. Wolfer and Torrance gathered for a final conference, which resulted in the execution of the trust agreement on October 3, 1927.

The trust fund was established with the securities purchased from the Company prior to Mr. Wolfer's death and with additional securities, also purchased from the Company out of the proceeds of Mr. Wolfer's life insurance. The additional purchases were approved by cable from Jaffe in Havana. Finally, plaintiff delivered to the trustee bonds in the face amount of $31,000 which, when added to the corpus of the trust, brought the total of the trust fund to approximately $81,000.

By the terms of the trust agreement, the income from the securities was payable to plaintiff-settlor for life, and upon her death was to be paid to her sons until they reached thirty years of age, and thereafter the principal was to be paid over to each son or his descendants. The agreement further provided for modification or revocation by the settlor and her father, jointly; or after the latter's death with the consent of her mother, Mrs. Tillie Jaffe. After January 1, 1938, the settlor alone had the right to alter or modify; and after January 1, 1943, the settlor had the sole right to revoke the agreement in its entirety. It also specifically provided that the trustee could acquire investments other than those permitted by law to trustees and that the settlor reserved the right to direct investment and reinvestment of the trust fund. The latter provision was modified in September, 1928, so as to give the settlor and her father, severally, the right to direct such investments.

The provision of the trust agreement, however, that is the crux of the instant case is subsection C of article third, and reads as follows: " In making or disposing of any investments, the Trustee may purchase the same from, or sell the same to The National City Company, or any corporation, association, partnership or firm which may be affiliated with the Trustee, or in which the Trustee may in any other way be interested, as freely as it might or could deal with an independent third party, and without any greater or less responsibility, all rules or provisions of law to the contrary being hereby expressly waived."

The plaintiffs allege that after the execution of the trust agreement, the defendant " acting in concert with and in collusion with its affiliate, National City Company ", induced Mae Jaffe Wolfer to deliver large sums of money for the purpose of making investments in certain securities to be added to the corpus of the trust. Plaintiffs further allege that these investments were limited to those securities in which the Company had participated as a member of the underwriting syndicate.

Though it has previously been determined in *Gallin* v. *National City Bank of New York* (152 Misc. 679) that the National City Company was a legal entity separate and apart from the National City Bank, the relationship of the Bank and its securities affiliate is significant in the present controversy. As long ago as 1910, the Bank declared a special dividend and created the Company. All of the stock of the Company was held by three trustees, who were required to be directors of the Bank. The trustees voted the stock and thus selected the directors of the Company, with the further result that the board of directors of each organiza-

tion was frequently overlapping. For a long period, the same person was president of both the Bank and the Company. The two organizations occupied offices in the same buildings.

Among the essential functions of the Company were those of underwriting and marketing securities. Sales of such securities resulted in profits to the Company, which were distributed to its officers and stockholders, who, in many instances, were also officers and security holders of the Bank.

The transactions in question in the instant case were those made by the Bank, as trustee, in which it had purchased securities. from the Company and in which these same securities had been issued or underwritten by the Company as a member of the selling syndicate or as the underwriter. It has been revealed that all the purchases or exchanges made between February 16, 1928, and November 28, 1930, by the Bank for the Wolfer trust account were of this nature. The sharp decline in the security markets in 1929 and 1930 resulted in an eventual capital loss of $35,330 in these securities.

The standard of loyalty for fiduciary relations does not permit a trustee to create or to occupy a position in which he has interests to serve other than the interest of the trust estate. Undivided loyalty is the supreme test. (*Meinhard* v. *Salmon*, 249 N. Y. 458, 464.) Plaintiffs urge that the defendant by permitting its securities affiliate, the Company, to participate in the selection of securities to be included in the trust, placed itself in a position of divided loyalty as a matter of law. To support this contention, plaintiffs cite the recent case of *Albright* v. *Jefferson County Nat. Bank* (292 N. Y. 31, 40) wherein the court, quoting in part from an earlier case, said: " The trustee, we may assume, acted with a view solely to the best interests of its *cestui*, uninfluenced by the fact that its stockholders might profit by the purchase from the Securities Corporation. Indeed, the amount of that profit was so small that such inference is perhaps inescapable. * * * The value of the rule depends in part upon its vigorous and inflexible enforcement. If a corporate fiduciary has placed itself in a position where its interest or the interests of its stockholders *may* conflict with the interests of the *cestui*, the law ' stops the inquiry when the relation is disclosed, and sets aside the transaction or refuses to enforce it, at the instance of the party whom the fiduciary undertook to represent, without undertaking to deal with the question of abstract justice in the particular case.' "

In considering a similar problem, the Court of Appeals has said that the question is not whether a corporate trustee and an

affiliate corporation are separate legal entities, but whether the trustee has placed itself in a position " where its interest was or *might be* in conflict with its duty." (*Matter of Ryan,* 291 N. Y. 376, 407.)

It is well settled in this State, however, that a settlor of a trust has the right to select the agencies by which his bounty is to be distributed and to impose the terms and conditions under which it is done. (*Denike* v. *Harris,* 84 N. Y. 89, 94; *Crabb* v. *Young,* 92 N. Y. 56, 65; *Matter of Balfe,* 245 App. Div. 22.) In the *Balfe case* (*supra,* p. 24), the court, holding that there was no basis for the surcharge of the corporate trustee, said: " the decedent was willing that the trustee should act under conditions of divided loyalty. He had the power and right to so provide. That which he knowingly did with his own property did not impinge public policy or involve the doing of anything *malum in se* or *malum prohibitum.*"

To the same effect are the rules of law expounded in the Restatement of the Law of Trusts. Thus, comments of section 170: " *Terms of the Trust.* By the terms of the trust the trustee may be permitted to sell trust property to himself individually, or as trustee to purchase property from himself individually, or to lend to himself money held by him in trust, or otherwise to deal with the trust property on his own account. The trustee violates his duty to the beneficiary, however, if he acts in bad faith no matter how broad may be the provisions of the terms of the trust in conferring power upon him to deal with the trust property on his own account."

Though " Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty " (*Meinhard* v. *Salmon,* 249 N. Y. 458, 464, *supra*), this court is powerless to act where the trust agreement itself permits the disintegrating erosion of particular exceptions. In recent years the legislatures of other States have taken notice of the problem here involved and made provisions about it, generally to the effect that the sale of property of a securities affiliate to the trust is discouraged or prohibited. For instance, the State of Oklahoma, by the Laws of 1941 (p. 252, § 11), passed the following statute: " No trustee shall directly or indirectly buy or sell any property for the trust from or to itself or an affiliate * * * ." A few years earlier, the Supreme Court of Oklahoma had been unable under its existing statutes to set aside a trust agreement which permitted divided loyalty. That court, though setting the standard at " the highest degree of care and skill required of the trustee * * * in any case ",

still upheld the terms of such trust agreement. (*Finley* v. *Exchange Trust Co.*, 183 Okla. 167, 172.)

Uniform Trust statutes similar in context to that of Oklahoma on the question of self dealing and divided loyalty have been adopted by Ohio, South Dakota and Texas. Indiana and Washington, however, have enacted statutes which specifically exempt a trustee from the rules of divided loyalty where the trust instrument so provides.

The Legislature of the State of New York has not in all respects considered this problem in connection with trustees of an *inter vivos* trust, and I, therefore, must find that the provision in the instant agreement which permits the Bank to deal with its securities affiliate is not against the public policy of this State.

Plaintiffs have attempted to avoid the significance and effect of the terms of the trust agreement and contend that the defendant failed in its duty to fully disclose its relation with its securities affiliate. (*Wendt* v. *Fischer*, 243 N. Y. 439, 443.) It has long been the rule that if dual interests are to be served the disclosure to be effective must lay bare the truth, without ambiguity or reservation, in all its stark significance. (*Dunne* v. *English*, L. R. 18 Eq. 524.) Other than the trust instrument itself, the record does not contain any single instance of the necessary disclosure. But, a careful review of all the facts compels me to decide that the execution of the trust instrument by Mae Jaffe Wolfer, under the experienced eyes of her father, and with his independent assistance, was sufficient disclosure. Especially is this so, in view of plaintiff's father's prior transactions with both the Bank and the Company. It is also pertinent to note that before the inception of the trust, plaintiff and her husband had dealings with both organizations. The provision of the trust agreement which permitted the Bank to deal with its securities affiliate and the course of conduct of the parties, constituted sufficient disclosure to settlor and her father, both of whom had the power jointly to modify, alter or revoke the trust in whole or in part.

No covenant of immunity, however, can be drawn that will protect a person who acts in bad faith. (*Industrial & General Trust, Ltd.*, v. *Tod*, 180 N. Y. 215, 225.) In the instant case, it has not been denied that the Company profited by the sales of securities to the Bank and others. Such profits inured to the benefit of either the officers of the Company or the stockholders of the Bank, or both, and frequently the officers and the stockholders were one and the same. To the question as to whether such transactions were negotiated solely in the interest of the

beneficiaries, I find no specific evidence that such transactions and resulting profits were of primary importance in the administration of the instant trust. Without any evidence of dishonesty or willful neglect, there is no taint of bad faith in the fiduciary relation herein.

Finally, it must be considered that there is no charge of over-reaching by the trustee. Though not a business or career woman, Mrs. Wolfer has not been dominated or directed solely by the defendant or its employees. In fact, from the time of the earliest transactions between the parties, to and including the period of the disputed purchases, the settlor-beneficiary had the benefit of independent advice. Moreover, the plaintiff or her father, actually or formally, specifically authorized all the transactions in dispute.

A Referee of this court, weighing almost identical facts as those in the instant case, held that the trust agreement which permitted the City Bank Farmers Trust Company to deal with the National City Company was binding upon the parties and that there had been no abuse of the fiduciary relation. (*City Bank Farmers Trust Co.* v. *American Security & Trust Co.,* unreported except that the Referee's opinion was confirmed at Special Term and affirmed by the Appellate Division, First Department, 254 App. Div. 848.)

The acts complained of are those of the trustee as authorized and contemplated by the very terms of the trust instrument. In the absence of allegation and proof that the instrument itself or the specific powers granted were the result of fraud or deceit, plaintiffs may not be heard to complain that those acts caused damage or impairment of the trust corpus.

For the foregoing reasons the relief demanded by the plaintiffs must be denied and judgment directed in favor of the defendant upon the merits. In accordance with the stipulation and agreement of counsel the account of the defendant trustee as rendered is approved.

Submit judgment and decree in accordance with this decision.